## Lake Erie & Western R. R. Co.
### v.
## Max Rosenberg.

*Carriers—Stock—Delay in Unloading—Authority of Station Agent—Evidence—Instructions—Practice—Amendment.*

1. It may be assumed that a railroad station agent has authority to contract with reference to the shipment and prompt unloading of live stock.

2. In an action brought against a railroad company to recover damages for the sickness and death of horses, arising from failure to unload the same as agreed, this court holds that the evidence sustains the verdict for the plaintiff.

3. The court below properly admitted evidence as to the condition of the stock immediately after liberation from the car, and also as to their subsequent condition.

4. An objection to an instruction to the effect that the plaintiff might recover for death of two horses, only one being claimed in the declaration, can not be first raised in this court.

[Opinion filed February 21, 1889.]

Appeal from the Circuit Court of McLean County; the Hon. Alfred Sample, Judge, presiding.

Mr. A. E. De Mange, for appellant.

Messrs. Neville & Lindley, for appellee.

Wall, P. J. The appellee recovered a judgment against the appellant in the sum of $252.52, for damages occasioned

by delay in unloading a car of horses shipped by appellee from Paxton to Bloomington over the railroad of appellant.

The evidence on behalf of appellee tended to prove that Allen, his agent, applied to Abbott, agent of appellant at Paxton, for a car in which to ship the horses, intending to load them the next day, and that Abbott suggested they could be shipped that night, which Allen said he would like if they could be unloaded when they got to Bloomington, and that Abbott said he would telegraph Merwin, the agent at Bloomington, and there would be no trouble about that; and upon this assurance the horses were loaded and sent forward that night. The evidence also tended to prove that the stock reached Bloomington at 12:45 A. M., and were warm and steaming. They had not been used to such mode of travel, and their condition on arrival is thus accounted for, it being not unusual for animals to get excited and overheated when making such a trip for the first time.

The agent of appellee, who accompanied the stock, asked the conductor to have the car placed at the chute, so that the horses could be unloaded. He said this was not his duty but the yard-master's. After being informed by the night operator that Merwin, the station agent at Bloomington, had given no orders about it, appellee's agent went to Merwin and got an order to the yard master to unload the stock, but he refused to comply. This was on the 20th of October. It turned cooler after midnight, and when the horses were finally unloaded at 7 o'clock in the morning, they were shivering and coughing.

Several of them were sick and two died afterward, as a consequence, it was claimed, of cold taken by reason of remaining in the open car after having become heated by the trip.

There is sufficient evidence in the record to support the appellee's theory, not only as to the agreement and assurance of the Paxton agent that the stock should be promptly unloaded, but as to the damages occasioned by the failure in this respect. It is true the agent at Paxton denies that he gave such assurance, but it appears from the evidence of the operator and of the agent at Bloomington, that it was known

the stock was coming, and the jury were not without warrant in accepting the version of appellee's agent. There is, of course, some room for controversy as to whether the injury sustained by appellee was caused by the delay in question, but the jury were justified in the conclusion reached upon this point.

Complaint is made that the court, instead of confining appellee to proof of the difference in market value between the time the horses reached Bloomington, 12:45, and the time they were unloaded, 7 A. M., permitted proof of the condition when unloaded, and the subsequent condition of sickness, etc. We are unable to appreciate the point thus made. The question was as to the effect of the delay, and there was no better way to ascertain this than to prove the appearance, symptoms and condition of the animals immediately thereafter, and let the jury from this proof form their opinion.

To prove the difference in market value between the hours of midnight and 7 A. M., would, of course, be wholly impracticable. It is objected the court permitted witnesses to be asked the effect of allowing warm, sweating horses to stand in a car five hours, when no witness had sworn they were warm and sweating.

Allen, the agent of appellee, who was in charge of the horses, swore they were warm and "steaming," by which he no doubt meant and was understood as saying, that they were warm and sweating. We think this objection untenable, and that there is nothing in the point made in this connection, that it was error to instruct that the jury might "assess plaintiff's damages at the amount he has sustained, as shown by the evidence," this expert evidence being before the jury.

It is urged that the carrier is not liable for loss caused by the inherent vitality of the animals, and that if they got overheated by fright and excitement, it was no reason why the carrier should have a crew of men in readiness to unload promptly in the night time.

The answer to this is that appellee would have waited until the next day, when the delay in unloading would have been obviated, but for the suggestion of the Paxton agent and his

promise to telegraph the agent at Bloomington, and the assurance there would be no delay. The court properly told the jury that it was sufficient if the agent was apparently authorized to do this. The company can not be heard to say that such a matter could be authorized only in some special way. Any ordinary business man might reasonably suppose, from the nature of things, that there was authority to give an assurance of this sort. It was within the scope of the power he was exercising—so apparently, as that those dealing with him might act upon the presumption it was authorized.

It is urged the court erred in instructing that plaintiff might recover for two horses that had died, when the declaration alleged the death of but one. There was proof, without objection, of two dying, and it does not appear that the attention of the court was called to the point of the averment in the declaration. The objection might have been obviated by an amendment, under section 24 of the practice act, at any time before final judgment, and should have been made to the trial court. It comes too late here. I. & St. L. R. R. Co. v. Estes, 96 Ill. 470; Driggers v. Bell, 94 Ill. 223.

The second instruction refused by the court, so far as it contained anything necessary or proper, was embodied in the first given for appellant, and there is no error to be based upon its refusal. The main question in the case was one of fact, and we think there was enough to support the verdict, and that no substantial error was committed by the rulings upon evidence or instructions. The judgment will be affirmed.

*Judgment affirmed.*