CHAUNCEY HARRELL v. THE WILMINGTON AND WELDON
RAILROAD COMPANY.

*Railroad Company—Non-shipment of Freight—Action for
Penalty—Agency—Delivery*

In an action against a railroad company for a penalty, under section 1967
of *The Code*, it was in evidence that plaintiff carried a bale of
cotton to defendant's warehouse and found the agent and one R.
in the office; that he said he wished to deposit a bale of cotton;
whereupon R. went with him, weighed the cotton and gave him
a bill of lading in the agent's presence, with the agent's signa-
ture " per R." It was also in evidence that R. had been in the
agent's office several months; that he had delivered freight; that
eleven days thereafter plaintiff found that the cotton had not been
shipped, and heard the agent abuse R. for carelessness: *Held*, that
there was sufficient evidence to warrant the jury in finding a ver-
dict for the plaintiff, upon an issue as to whether the cotton had
been delivered to the defendant.

This was a CIVIL ACTION to recover a penalty under sec-
tion 1967 of *The Code*, begun before a Justice of the Peace
and tried, on appeal, before *Bynum, J.*, at November Term,
1889, of DUPLIN Superior Court.

There was judgment for the plaintiff, and the defendant
appealed.

The facts are stated in the opinion.

*Mr. W. R. Allen*, for the plaintiff.
*Messrs. G. A. Ramsay* (by brief) and *Geo. Rountree*, for the
defendant.

DAVIS, J.: "By consent, the only issue submitted to the
jury was whether the cotton in controversy was delivered by
plaintiff to defendant company on the 13th day of Novem-
ber, 1888."

The defendant insists that there was no evidence sufficient
to go to the jury, upon which the instructions of his Honor,

set out in the record, and excepted to, could be based, and the instructions were misleading.

As the sole questions presented for our consideration are involved in the single question as to whether there was any evidence to warrant the instruction given, we reproduce only so much of the case on appeal as relates to the charge of his Honor and the evidence relied on by the plaintiff to sustain it.

Chauncey Harrell, the plaintiff, was sworn in his own behalf, and testified that on the 13th day of November, 1888, he carried a bale of cotton to the defendant's warehouse at Duplin Roads, and went to the office of the Railroad Company and saw in the office one Beall, the agent of the company, and also one Robinson; that witness said, "Good morning," and, without addressing his remarks to any particular one, said, "I wish to deposit a bale of cotton;" whereupon, Robinson went with witness and weighed the cotton, and gave witness a bill of lading therefor; that the office is about six feet by ten in size; that Beall and Robinson were in the office when witness went there; that witness does not know whether Beall heard his remark or not; when witness went back to the office, Robinson gave him the bill of lading, of which the following is a copy, to-wit:

"November 13, 1888.

"Received of Chauncey Harrell, D. Roads, N. C., one bale of cotton marked, numbered and weighed as below, to be transported at company's convenience by the Wilmington and Weldon Railroad Company unto C. J. Southerland, of Wilmington.

| No. Bales | Marks | Weight |
|---|---|---|
| 1 | C. H. | 500 |
|  | (Signed) | "B. J. BEALL, |
|  |  | "Per R." |

Beall and Robinson were in the office; that the next time witness saw the cotton was the 24th of November; it was in the same warehouse, and he ordered it shipped that day, and it was shipped. No new bill of lading was given him that day. Witness made complaint to Beall. He (Beall) cursed and abused Robinson, saying it was the third time he had done so that Fall.

Cross-examined, witness testified that the cotton was shipped the 24th of November; that on the 13th, when he called to deposit the cotton, Beall was at the telegraph instrument, but he did not think he was operating; that witness simply went to the door of the office, and after bidding them "good evening" said he wanted to deposit a bale of cotton for shipment; that he did not demand a bill of lading on the 24th, but had demanded it on the 13th; that Beall was abusing Robinson for carelessness; that witness did not hear Beall say that Robinson had no right to receive freight and give bills of lading, and never heard Beall say so.

*Re-direct*—Robinson and Beall were three or four feet apart at the time witness went to office on the 13th. Robinson had been staying there several months; witness had seen Robinson handling and delivering freight, and witness had heard that he was studying telegraphy there. Witness never saw Robinson give a bill of lading for freight before, but had seen him deliver freight to Malard and to Murphy Brothers. Witness cannot single out any other person to whom Robinson delivered freight. He saw Robinson open warehouse door and assist those parties to get goods out, but does not know whether the agent was there then or not; does not remember whether he saw him there or not. Witness has seen parties go to Robinson and tell him they had freight, and he would show them where to put it on the platform. Witness has seen a party take a coop of chickens to Robinson to ship, but at such time witness does not know

whether the agent was present or not; does not know how long this was before shipment of his own cotton—probably three or four months.

At the plaintiff's request his Honor, in his charge, instructed the jury as follows, to-wit:

" 1. That, while the agent Beall could not delegate his authority, he could employ a servant; and if the jury believe that said Beall employed Robinson to assist him in his office 'by the payment of money or by teaching him telegraphy for his services, and that it was within the scope of Robinson's employment to receive freight and give bills of lading, and this was known to defendant company, and they assented to it, and that said Robinson, acting under such employment, received the bale of cotton and gave the bill of lading, the act of Robinson would be the act of Beall, and the jury should, in such case, answer the issue in the affirmative.

" 2. That the defendant company may have more than one agent at its several depots; and if the jury believe that Robinson was in the habit of·receiving freight and giving bills of lading, and doing other acts for said company with its knowledge and acquiescence, and that said Robinson received the bale of cotton of the plaintiff and gave the bill of lading in evidence, the said company would be bound by the acts of said Robinson, and the jury should answer the issue Yes.

" 3. [Being a modification of plaintiff's third requested instruction.] If the defendant company knew that Robinson had been receiving freight, although he had not been employed by them, and they had permitted him to do this, and the plaintiff knew this; or, if knowing Robinson had been receiving freight, they so acted on his receipts as to induce the public to believe that he was their authorized agent, they would be bound by his action, and the jury should answer the issue Yes.

" 4. [Being a modification of plaintiff's fourth requested instruction.] That if said Robinson had no authority from Beall or the defendant company to receive the bale of cotton and give the bill of lading, the said company would still be bound by the acts of Robinson if it ratified them; that said company could not ratify a part of his acts and repudiate a part, but must ratify the whole or repudiate the whole; that the fact that the defendant company shipped the bale of cotton on the bill of lading given by Robinson, and gave no new bill of lading, if the evidence satisfies the jury that the company, and not only Beall, knew it, is evidence from which the jury may infer that said company ratified the act of Robinson, and if the jury should find that the defendant company ratified the act of Robinson, they should answer the issue Yes, although they believe that Robinson had, in fact, no authority from Beall or the company."

To these instructions the defendant excepts on the grounds—

" 1. That there was no evidence that the defendant company had knowledge of, or assented to, or acquiesced in, any of the acts of Robinson in receiving freight and giving bills of lading for the same.

" 2 That there was no evidence that Robinson had been in the habit of receiving freight and giving bills of lading therefor.

" 3. That there was no evidence that the defendant company had previously so acted on the receipts of Robinson as to induce the public to believe that Robinson was its authorized agent,

" 4. That there was no evidence that the defendant company had notice of the shipment of this cotton being made without a new bill of lading, and that without such notice they could not ratify such act. And the defendant insists that in said particulars there was misdirection of the jury in his Honor's charge."

The defendant requested his Honor to instruct the jury as follows:

"That in order to recover it was incumbent on the plaintiff to establish by proof that the defendant railroad company knew, or had reason, from observation, information, or otherwise, to believe that Robinson was acting for the railroad company in receiving freight, or that Beall actually knew of the receipt of this cotton, and made the receipt of it his own act. [That there being no evidence of either fact, direct or indirect, it is the duty of the jury to answer the issue No.]"

His Honor gave the instruction, except the part here enclosed in brackets, which part he refused to give. Defendant excepts for that—" First, there was no evidence that the defendant company knew, or had reason from observation, information, or otherwise, that Robinson was so acting for the company; second, that there was no evidence to go to the jury that Beall actually knew of the receiving of this particular cotton, at the time of its receipt by Robinson, and made the receipt of it his own."

The question for our consideration is not one of preponderance of evidence, but whether there was any evidence reasonably sufficient to go to the jury in the aspects of the case presented by the charge excepted to; for, if there was no evidence which the jury had a right to consider, or only a *scintilla* of evidence, or if there was no evidence to which the instructions of his Honor were applicable, then, however correct they may have been as abstract propositions of law, the defendant would be entitled to a new trial. This is too well settled to need citation of authority.

1. As to the first exception, it is insisted that his Honor, in his charge, *assumed* that there was evidence from which the jury would be justified in finding "whether Beall had employed Robinson to receive freight and give bills of lading, and *this was known to the defendant company and they assented*

*to it,* and that said Robinson, acting under such employment, received the bale of cotton," whereas, as the defendant says, there was no evidence that the company knew of such employment or assented to it.

What is necessary to constitute notice or assent? In Wood's Railway Law, Vol. I, § 166, it is said: "The law of agency is especially applicable to business corporations, because all their business must be conducted by agents. Especially is this the case as to railroad companies." And again, section 168: "It is well settled that notice to an agent, actual or implied, relative to a matter affecting his agency, and while such agency exists, is notice to the principal, and such is also the rule as to a knowledge of facts relating to the business of his agency acquired while acting for his principal," &c.

Assuming, therefore, that Beall, by the maxim *"Delegatus non potest delegare,"* had no authority to employ Robinson as an *agent* for the railroad company—if, in fact, he was acting as such—notice or knowledge of the fact to Beall was notice to the company—not only so, but if Beall employed Robinson as a servant to assist him, which we think he had a right to do, then Robinson's act was Beall's act, as much so as if performed by Beall himself. As a matter of fact, the receipt was signed "B. J. Beall, per R "

The evidence for the plaintiff is to the effect that when he carried the cotton to the defendant's ware-room, Beall and Robinson were in the office—a room about six feet by ten in size; that they were three or four feet apart; that, after salutation, he said, "I wish to deposit a bale of cotton," whereupon Robinson went with him and weighed the cotton, and went back to the office and gave him the receipt, Beall and Robinson being in the office; that Robinson had been there several months; that he had seen him handling and delivering freight; that he had seen a.party take a "coop of chickens" to Robinson to be shipped; that when

the cotton was shipped, no "new bill of lading" was given; that when he complained to Beall, "he (Beall) cursed and abused Robinson, saying it was the *third* time he had done so that Fall"; that Beall was "abusing him for carelessness; that he did not hear Beall say that Robinson had no right to receive freight and give bills of lading, and never heard him say so." Robinson was in the office with Beall when plaintiff said, "I wish to deposit a bale of cotton," and if, when Robinson, instead of Beall, weighed the cotton and gave the receipt, it was the plaintiff's duty, before delivering the cotton to him and taking the receipt, to inquire by what authority he was acting, as insisted by the defendant, was it not more clearly the duty of Beall, who knew, or ought to know, what was being done in and about the office, to have acted himself and said, "I am the man to receive your deposit of cotton; I am the agent, and not Robinson; he has no authority"? So far from doing anything like this, according to the plaintiff's testimony, he never repudiated the act of Robinson, though performed in his presence, gave no other bill of lading, and only abused Robinson for "*carelessness*," impliedly admitting that he had some duty about the office. But the defendant says, and it is conceded, that "to constitute a delivery of property to a carrier's agent, in the proper sense, the thing offered for transportation should come into the hands of the carrier's agent for receiving freight—not of any person whom the carrier may employ for other purposes." Did the plaintiff so deliver the cotton to the defendant's agent for transportation? The plaintiff carried the cotton, according to his testimony, to one of the regular places for receiving freight by the defendant company. Both Beall and Robinson were in the office. He stated his wish without addressing either of them. Robinson went out and weighed the cotton, and went back into the office where Beall was and gave the receipt. Under the

circumstances, would any "plain man" have stopped to question the authority of Robinson before taking the receipt? There was evidence.

2. As to the second exception, defendant says that there was no evidence that the company had "more than one agent at their depots," and that there was not the slightest evidence that Robinson ever "received any freight or gave any bill of lading," etc. We think there was some evidence in the facts detailed in plaintiff's testimony. From the evidence, it appears that Robinson was engaged about the office, acting for defendant company, and Beall himself, abusing him for "carelessness," said it was the *third* time he had done so during the Fall. The evidence would warrant one going to the Duplin Roads Station, and, under the circumstances detailed by plaintiff, in supposing that Robinson was *the* agent, as on that occasion, in the presence of Beall, he discharged the duties of agent, and it only appears otherwise from the receipt, which seems to have been given in the office, in the presence of Beall.

3. The knowledge of Beall, as to Robinson's acts in and about the office, affected the company with notice, and what has been said in regard to the first and second exceptions applies to the third.

4. Robinson did nothing that it was not the duty of Beall to do. Beall was present. The cotton was in the defendant's warehouse and no receipt was given except that given by Robinson, and, without any other receipt, the cotton was shipped, and what has been said in regard to the other exceptions applies to the fourth, and also to that part of the instruction asked by the defendant and refused by his Honor.

Affirmed.