# GEORGE NICHOLS, Respondent, v. OREGON SHORT LINE RAILROAD COMPANY, a Corporation, Appellant.

### No. 1309.    (66 Pac. 768.)

1. **Carriers: Railroads: Contract; Ultra Vires.**
   A railway's contract to furnish a shipper cars belonging to another line is not *ultra vires*.

2. **Same: Agency: Apparent Scope of Authority.**
   A contract made by a station agent on behalf of a railroad company to furnish a shipper a certain variety of cars belonging to another line, being within the apparent scope of such agent's authority, binds his principal.

3. **Same: Burden of Proof: Presumption.**
   A contract to furnish a shipper cars belonging to another railroad, being within the apparent scope of a railway station agent's authority, it is unnecessary, in an action by the shipper on such contract, to allege or prove the agent's authority, but the burden is on the carrier to rebut the presumption that such authority existed.

4. **Same: Impossibility of Performance.**
   Where a railroad company contracted to furnish a shipper a certain number of cars at a specified time, but it was understood that such order was merely an expression of preference, and that the shipper would accept any variety of cars he could get, if the kind ordered were not obtainable, the company was not absolved from the duty to furnish cars at the required time by inability to obtain the precise kind ordered.

5. **Same: Impossibility of Performance: Liability.**
   Where a railroad company contracted to furnish cars to a shipper at a specified time, but neglected to do so or to give seasonable notice of its inability so to do, it was liable for damages occasioned by failure to furnish the cars at the agreed time.

6. **Same: Unlawful Discrimination.**
   Where plaintiff ordered cars of defendant railway company, to be delivered at a certain date, defendant's action in filling subsequent orders before plaintiff's was unlawful discrimination.

(Decided November ·25, 1901.)

Appeal from the Third District Court, Salt Lake County.—
*Hon. John E. Booth,* Judge.

Action to recover damages alleged to have been caused
by a breach of contract on the part of the defendant company.
From a judgment in favor of the plaintiff, the defendant appealed.

AFFIRMED.

*P. L. Williams, Esq.,* and *George H. Smith, Esq.,* for
appellant.

*H. S. Tanner, Esq.,* and *John M. Cannon, Esq.,* for respondent.

STATEMENT OF FACTS.

This is an action to recover damages alleged to have been
caused by a breach of contract on the part of the defendant.
It was alleged in the complaint that on November 28, 1899,
the plaintiff and defendant entered into a contract by which
the defendant agreed to furnish cars on October 5, 1899, sufficient for the transportation of 3,370 head of plaintiff's sheep
from Soda Springs, Idaho, to Omaha, Neb.; that the defendant, although having the facilities, failed, neglected, and
wrongfully refused to receive and transport the sheep until the
fifteenth day of October, 1899; and that, by reason of such
failure and negligence from day to day to receive and transport the sheep, the plaintiff was compelled to hold them near
defendant's corrals at Soda Springs, in the storms and without feed, for ten days, thereby causing the sheep to lose much
flesh and become otherwise damaged. The answer admitted

that the defendant was a railroad corporation and common carrier, as alleged in the complaint, but denied all the other allegations. From the testimony it appears, substantially, that the plaintiff was in the business of sheep raising; that James Strachan was the defendant's agent at its station at Soda Springs, and had charge of the shipping of freight from that point; that on September 28, 1899, the plaintiff went to that station and ordered twelve cars to be furnished him on October 3 following; that the agent told him he would be busy on the third and fourth of October, but could furnish them on the fifth; that the order was finally entered in a book kept by the agent for that purpose as follows: "George Nichols, 12 36-foot Chicago and Northwestern double-deck stock cars, to load October 4, for Chicago via U. P. and Chicago and Northwestern Railway;" that on the same day, but after the plaintiff's order was entered, the agent entered another order, at the instance of T. J. Woodland, for nine cars of precisely the same kind, to be loaded with sheep by Woodland also on the fourth day of October; that notice was given at the close of the business of each day to the chief dispatcher of the company by telegraph, and such notice embodied the request for cars, and the dispatcher then turned over the message to the car accountant, who was then to turn the cars over to the chief dispatcher for distribution from time to time; that, according to the course of business of the company, such orders given by shippers were entered in the order in which they were delivered at the office, and, if several were given on the same day, they were entered in the book in the order actually received, and preference was given in that order in supplying cars; that, where a person ordered a certain kind of car, it simply showed a preference for that car; that it was generally understood that, if a shipper could not get the kind of cars he ordered, he would take what he could get, and in this case the agent so understood the order of the plaintiff; that the plaintiff was ready to ship on the fifth, and from that

date to the fifteenth of October he manifested his willingness to receive any kind of cars; that Woodland, who placed his order for cars to load on October 5, subsequent to that of the plaintiff, was furnished four cars on October 5; that Hershey gave his order September 10 for twenty-five cars to load October 25, and had them furnished October 9; that on the fifth day of October, Nelson ordered cars for October 8, and that they were furnished on the thirteenth; that in a similar way Knollin was given preference over the plaintiff to load sheep; that in this way the plaintiff was compelled to keep his sheep near the corrals for ten days, expecting each day to load them; and that there never was any attempt made to notify him "that the cars would not likely be on hand." At the trial the jury returned a verdict in favor of the plaintiff in the sum of $1,208.72, which sum was reduced by the court to $1,000, and judgment was entered accordingly. Thereupon this appeal was prosecuted.

BARTCH, J., after a statement of the case as above, delivered the opinion of the court.

The appellant insists that neither its station agent, nor the company itself, had any power to enter into a contract to furnish cars of another company, and that therefore the company was not liable under the contract in evidence. This position can be of no avail to the company under the evidence in this case. Admitting that it could not furnish cars of another company without such company's consent, there is nothing to show that it could not enter or had not entered into some arrangement with other railroad companies to furnish their cars to shippers. On the contrary, the proof indicates that it was a usual thing for the appellant to furnish such cars, and we know of no rule of law which prevents such an arrangement between common carriers. An arrangement whereby one or each one of several common carriers is permitted to ship freight over the lines of the other, and for that

purpose to procure cars of such other, is entirely in consonance with public convenience and benefit, and hence is not in contravention of public policy. Nor has it been shown in this case to be forbidden by any law or the charter of the company. From the proof it would seem that the power to make such arrangements is necessary to carry out the objects and purposes of the corporation. In 2 Redf. R. R., sec. 180, p. 134 et seq., it is said: "The American cases upon this subject, with rare exceptions, recognize the right of a railway company to enter into special contracts to carry goods beyond the line of their own road. And, where different roads are united in one continuous route, such an undertaking in regard to merchandise received and booked for any point upon the line of the connected companies is almost matter of course. It is, we think, the more general understanding upon the subject among business men and railways, their agents and servants. And this is so although the connection among such roads is only temporary, and merely incidental for the convenience of transacting business; one road acting sometimes as agent for other roads by their procurement or adoption." And again, in section 181, p. 141, it is said: "It has generally been considered, both in this country and in the English courts, that receiving goods destined beyond the terminus of the particular railway, and accepting the freight through, and giving a ticket or check through, does import an undertaking to carry through, and that this contract is binding upon the company." In Railway Co. v. Morton, 61 Ind. 539, 577—a case cited in behalf of the appellant—it was said: "Doubtless a common carrier may so hold himself out to the public as to make himself liable for not receiving and carrying goods beyond his own line; or by a special contract, he may make himself liable for not receiving and carrying goods beyond his own line; or, if a person not a common carrier in fact, and not holding himself out to the public as a common carrier, undertakes by contract to carry goods to a given point, he will be held liable for a breach of his

contract as a common carrier." If, then, the appellant had the power, as we think it had, to enter into special contracts or make arrangements with other railway corporations for the transportation of freight over their lines, we may justly assume from the course of dealing by the company and its agents, as shown by the evidence in this case, that some arrangement existed between it and the other corporations over whose lines the sheep were to be transported, including the Chicago & Northwestern Railway Company. Such being the case, the question is, had James Strachan, the company's agent, authority to enter into the contract in dispute? We think he had. The evidence shows that he was the agent in charge of the station at Soda Springs, and as such represented the corporation, and transacted its business there. The company held him out to the public as its agent to transact such business, within the objects of its creation, as might arise at that station. As to that station, and within the range of the corporate business to be there transacted, he must be regarded as the company's general agent, with the right to exercise such powers as necessarily, properly, and legitimately belong to the character in which his principal held him out. As to the business over which this controversy arose, it is clear from the proof that the company impressed upon the agent the character of one authorized to act and speak for it. The business was such as was within the powers of the corporation to transact, was transacted in the usual way, and therefore it can not be asserted, as against third persons who have acted in good faith, that such a contract is not within the scope of the agent's power, or that the principal did not intend to confer such power. Where, under such circumstances as are shown herein, a station agent contracts to ship live stock, the shipper has a right to assume that such agent acts within the scope of his authority. Authority to speak and act in such a case follows as a necessary attribute of the character impressed upon the agent by the principal. In 5 Am. and Eng. Ency. Law (2 Ed.),

351, the law is stated thus: "Where a railroad company places an agent in charge of its business at a station, and empowers him to contract for the shipment of freight, it holds him out to the public as having the authority to contract with reference to all the necessary and ordinary details of the business, and within the range of such business he becomes a general agent. Every presumption is therefore in favor of the authority of a station agent to enter for his company into contracts for transportation, when such contracts are not of an unusual or extraordinary character." In Wood v. Railway Co., 68 Iowa 491, 27 N. W. 473, 56 Am. Rep. 861, in reference to the authority of a station agent it was said: "He was the only representative of the company at that station. He was placed there for the purpose of transacting its business at that place. He was authorized to contract in its name for the transportation of property of the kind in question, and had the authority to receive it for shipment. Shippers had the right to assume, in the absence of information to the contrary, that he had authority from his principal to contract for the doing of whatever was reasonably necessary to be done in the shipment of such property. By placing him in charge of its business at that station, and empowering him to contract for the shipment of such property, it held him out as possessing the authority to contract with reference to all the necessary and ordinary details of the business. Within the range of that business, he was a general agent." So, in Harrison v. Railway Co., 74 Mo. 364, 41 Am. Rep. 318, it was said: "It may, we think, be safely affirmed that a station agent clothed with the power, and whose duty it is, to receive and forward freight, who makes a contract within the scope of his apparent authority, thereby binds the company he represents, although in making such contract he may have exceeded his authority; and when such company seeks to absolve itself from liability arising under such contract on the ground that the agent, although apparently authorized to make it, in fact had no such authority, it

must show that the party with whom the contract was made had knowledge of the fact that the agent was acting beyond his authority." Mechem, Ag., sec. 278; Pruitt v. Railroad Co., 62 Mo. 527; Railroad Co. v. Rosenberg, 31 Ill. App. 47; McCarty v. Railway Co., 79 Tex. 33, 15 S. W. 164; Baker v. Railroad Co. (Mo.), 3 S. W. 486; Deming v. Railroad Co., 48 N. H. 455, 2 Am. Rep. 267; Railroad Co. v. Wolcott, 141 Ind. 267, 39 N. E. 451, 50 Am. St. Rep. 320; Harrell v. Railroad Co., 106 N. C. 258, 11 S. E. 286.

Nor was it incumbent upon the plaintiff to allege and prove that the station agent had authority to make the contract for cars. In a case where a common carrier is sued for a breach of such a contract which, as in this instance, is not shown to be of an unusual or extraordinary character, the presumption is that the agent had authority to make it, and the burden of proof is upon such carrier to show that he had not such authority. Railway Co. v. Wright, 1 Tex. Civ. App. 402, 21 S. W. 80; Pruitt v. Railroad Co., 62 Mo. 527.

The mere fact that the agent agreed to furnish a specific kind of cars owned by another railway company did not, under the circumstances shown in evidence, render the contract void, nor relieve the appellant company from its duty to furnish other cars if the specific cars could not be obtained; for it is shown that it was not unusual for the agent to enter into contracts like the one in question. It appears that on the same day of the making of this agreement he made another of exactly the same kind with another person. The agent himself, testifying for the defendant, stated that, if a person ordered a certain kind of car, "it simply showed a preference for that car;" that it was generally understood that, if a shipper could not get the kind of car he wanted, he would take what he could get; and that witness so understood the order of the plaintiff. It also appears in evidence that the plaintiff was willing to take any kind of cars he could get. The

order, after entry, was transmitted to superior officers of the corporation, without, so far as appears, any objection thereto being made by them. Under these circumstances, the company had no right to permit an unreasonable delay in furnishing cars. If, for any cause, it was unable to furnish them at the time it agreed to do so, then it became its duty to inform the shipper of such fact within a reasonable time, if practicable; and if, in the absence of such notice, the shipper believed that the cars would be in readiness at the time named, and, relying upon the conduct of the carrier, presented his live stock at the time and place named, only to find no cars, there would seem to be no good reason why the company should not be held liable for damages, if injury was caused by neglect of such duty. Ayres v. Railway Co., 71 Wis. 372, 37 N. W. 432, 5 Am. St. Rep. 226.

Nor had the appellant any right to furnish cars to other persons which, in accordance with the order of the time in which the notice for cars was given, ought to have been furnished to the plaintiff, and thus discriminate against him in favor of other shippers at the same station. The rights of all shippers of live stock applying for cars under the same circumstances are necessarily equal. The respondent was entitled to the same consideration respecting his order as any other shipper, and such discrimination as is disclosed by the evidence herein can not be upheld. The law in such cases permits no unreasonable preference or advantage to or in favor of any person. Ayres v. Railway, 71 Wis. 372, 37 N. W. 432, 5 Am. St. Rep. 226; McDuffee v. Railroad, 52 N. H. 430, 13 Am. Rep. 72; Ballentine v. Railroad, 40 Mo. 491, 93 Am. Dec. 315.

From the foregoing considerations, we are of the opinion that the court did not err in refusing to instruct the jury, as requested by the defendant, to the effect that the agent had no authority to make the contract in question, and that the same was therefore invalid.

We find no reversible error in the record. The judgment is affirmed, with costs.

MINER, C. J., and BASKIN, J., concur.