[No. 11321.  Department Two.  February 28, 1914.]

MOTT IRON WORKS, *Respondent*, v. METROPOLITAN BANK, *Appellant*.[1]

PRINCIPAL AND AGENT — AUTHORITY OF AGENT — PLEADING—COMPLAINT. In an action to recover from a bank the amount of a check, paid to the plaintiff's agent on his general indorsement, when defendant was alleged to have had notice that the agent's authority was limited to indorsement for deposit only, an allegation that the agent was not authorized to draw or check against plaintiff's account should not be stricken out as irrelevant, since it bore upon the extent of the agent's authority to indorse checks received by him and upon his general authority as plaintiff's agent.

BANKS AND BANKING—DEPOSITS BY AGENT—AUTHORITY OF AGENT—LIMITATIONS—BURDEN OF PROOF. In an action against a bank to re-

[1]Reported in 139 Pac. 36.

cover the amount of a check, indorsed by plaintiff's agent, and credited to the agent's account, the plaintiff has the burden of proving that the agent was authorized to indorse the check for deposit only, and that defendant had knowledge of such limitation, where the complaint alleged that the agent had authority to collect and receive and indorse for deposit checks drawn to plaintiff's order and that his authority was limited, to defendant's knowledge, and the answer denied that such limitations existed or that it had knowledge thereof; and the rule is not changed by the introduction of affirmative matter in the answer.

SAME—ACTIONS—AUTHORITY OF AGENT—QUESTION FOR JURY. In an action against a bank to recover the amount of a check, indorsed by plaintiff's agent, and credited to the agent's account, the liability of the defendant is for the jury, where there was evidence that the agent's authority had been specially limited to indorse plaintiff's checks for deposit only, and that plaintiff had knowledge thereof, and that the check in question was either deposited by the agent and credited to his private account, or later transferred from plaintiff's account to his own, and finally withdrawn by him, one witness testifying that an officer of the bank had stated that the defendant credited the amount to plaintiff's account and later permitted the agent to withdraw the fund without plaintiff's consent.

BANKS AND BANKING—DEPOSIT BY AGENT—LIMITATION ON AUTHORITY. An agent's general indorsement of a check payable to his principal may be for the limited power of depositing the check for collection on the principal's account, where it was understood that his power was limited to indorse for deposit only.

SAME—DEPOSIT BY AGENT — LIMITATION ON AUTHORITY — INSTRUCTIONS. An instruction as to a limitation upon the powers of an agent to indorse checks for deposit only should include the element of knowledge of such special limitation, where that was one of the principal issues in the case.

SAME. An instruction upon the special limitation upon the powers of an agent as to the indorsement of checks for deposit only is faulty where it uses the word "might" instead of "would" in speaking of the conditions which would justify belief in the possession of general powers.

SAME — DEPOSITS BY AGENT — AUTHORITY OF AGENT TO INDORSE CHECKS. An agent having general authority to indorse bank checks of his principal, may assign title therein to himself, and if offered for deposit in his private account, the bank is not bound to inquire as to his authority to make the deposit, in the absence of any known limitation upon his authority.

Appeal from a judgment of the superior court for King county, Ronald, J., entered December 6, 1912, upon the ver-

dict of a jury rendered in favor of the plaintiff, in an action on contract. Reversed.

*Douglas, Lane & Douglas* and *G. E. de Steiguer*, for appellant.

*McClure & McClure*, for respondent.

Fullerton, J.—This action was brought by the respondent against the appellant to recover the amount of a bank check, claimed to have been collected and misapplied by the appellant. The record discloses that the appellant is a banking corporation, doing a general banking business in the city of Seattle, and that the respondent is a corporation organized under the laws of the state of New York, engaged in the business of manufacturing and selling building furnishings and fixings and plumbers supplies. The respondent had authority to transact business in the state of Washington, and had in its employment, at the city of Seattle, one H. M. Crane, whom it denominates in its pleadings and evidence as its selling agent. This person admittedly had authority from respondent to quote prices upon, and make sales of, the respondent's wares, and "to collect dues, debts and obligations owing to the" respondent. Crane maintained an office in Seattle on the door and windows of which the respondent's name appeared. For use in the trade, he was furnished by the respondent with stationery containing advertisements of the respondent's wares, on which he is named as "representing" the respondent. In the city directories, he was advertised as the respondent's manager.

Shortly after Crane commenced representing the business of the respondent at the city of Seattle, he began to make deposits in the appellant bank. He opened two accounts, one in his own name and one in the name of his principal. His own account he checked upon in his own name. The respondent's account, by the terms of the instructions given the bank by respondent, could only be drawn upon by checks signed by certain named officers of the corporation residing

in the state of New York.  The officers of the respondent testified that Crane was authorized to make a restrictive endorsement, only, on checks drawn payable to the respondent; that is, an endorsement "for deposit only."  Crane, however, seems not to have followed this instruction, as none of the several checks put into the record were so endorsed; the form of endorsement adopted being, "J. L. Mott Iron Works, per H. M. Crane."  The bank's officers, moreover, testified that they knew of no such limitations upon the authority of Crane, and that they permitted him to make such diversion of the funds which were brought to the bank for deposit as he pleased.  The teller also testified that, during the time Crane did business with them, he deposited a large number of checks drawn in favor of the respondent which were endorsed in the respondent's name by Crane; that checks of this kind were usually directed by Crane to be deposited in the respondent's account, but that certain of such checks were directed by him to be deposited in his private account, and were so deposited.  He could, however, recollect only the general fact; the bank's system of bookkeeping with reference to local transactions affording no means of identifying the source of any particular item of an account.

On November 29, 1910, Crane appeared at the appellant bank with a check for $4,231.21, drawn by one Phillip A. Baillargeon on the Seattle National Bank in favor of J. L. Mott Iron Works, endorsed "J. L. Mott Iron Wks., per H. M. Crane," the endorsement being in the handwriting of Crane.  There is a conflict in the evidence as to the person for whom the check was deposited.  The secretary of the respondent testified that the check was deposited by Crane to the credit of the J. L. Mott Iron Works, and later transferred to Crane's private account.  The second vice president of the respondent testified to the same effect, and a stenographer in the employment of Crane testified that an officer of the bank, a short time after the transaction occurred, told her that the check had first been deposited to the

respondent's account and subsequently transferred to Crane's private account at his request. The officers of the bank, however, give a contrary version of the matter. They testified that Crane appeared at the bank with the check endorsed in the manner before stated, and passed it to the teller with the usual deposit slip made out in the name of H. M. Crane; that the teller accepted it in that form, and later passed the slip to the bookkeeper, who credited the amount of the deposit to Crane's account; and that the check was passed to another employee of the bank who collected it through the clearing house on the next day. The deposit slip was produced and is a part of the record. Its date and general appearance tends to substantiate the bank officer's version of the transaction. Some few days thereafter, Crane withdrew from the bank the amount of his deposit and absconded.

The paragraph of the complaint by which it was sought to charge the appellant with liability for the amount of the check is as follows:

"That heretofore and on to wit, the 29th day of November, 1910, one H. M. Crane was employed by the plaintiff in the City of Seattle, King county, Washington, as its selling agent; that as such selling agent the said H. M. Crane had authority from the plaintiff to collect dues, debts and obligations owing to the plaintiff, and to deposit the same to the credit of the plaintiff in a commercial account kept and maintained by the plaintiff and in the name of the plaintiff in the bank of said defendant in said City of Seattle; that incidental to such authority, the said H. M. Crane was authorized to collect and receive and to deposit for collection and credit to the account of the plaintiff, and not otherwise, drafts, checks and other evidences of indebtedness, drawn to the order of the plaintiff, and for that purpose the said H. M. Crane was authorized to endorse for deposit only, in the name of the plaintiff, such drafts, checks and other evidences of indebtedness, so by him collected and received; that the said H. M. Crane was not authorized to draw or check, in the name of the plaintiff or otherwise, against said deposit or account of the plaintiff, not to endorse for nego-

tiation or for any other purpose than for deposit only, in his own name or in the name of the plaintiff or at all, drafts, checks or other evidences of indebtedness, drawn to the order of the plaintiff; that the scope of the authority of the said H. M. Crane as agent of the plaintiff and the limitations thereupon, were well known to the defendant."

The appellant, answering the paragraph quoted, admitted that Crane had authority to collect dues, debts, and obligations owing the respondent, and to deposit the same to the credit of the respondent in the bank of the appellant, and that, incidental to such authority, was authorized to collect and receive and to deposit for collection and credit to the respondent checks, drafts and other evidence of indebtedness drawn to the order of the plaintiff; but denied each and every other allegation therein contained, and particularly denied that the scope of the authority of Crane as agent of the respondent "had the limitations therein mentioned." For a further and separate answer, it set up facts tending to show that Crane had been held out to the public, and particularly to the appellant bank, as the general agent of the respondent, having general authority to conduct and manage the respondent's business in the city of Seattle. A reply was filed putting in issue the affirmative matter in the answer, and a trial was had on the issues thus made, which resulted in a verdict for the respondent for the amount of the check with interest.

Prior to answering the complaint, the appellant moved to strike from paragraph four thereof the phrase reading, "that the said H. M. Crane was not authorized to draw or check, in the name of the plaintiff or otherwise, against said deposit or account of the plaintiff," on the ground that the same was wholly immaterial and irrelevant to the respondent's cause of action. The court overruled the motion, and the order recording the ruling constitutes the first error assigned. But notwithstanding the appellant has submitted in its brief a somewhat extended argument upon the question, we cannot

think it one of serious import. The allegation was not wholly foreign to the general subject-matter of the cause of action, as outlined in the complaint. One of the inquiries suggested therein was as to the extent of the agent's authority to endorse checks received by him in the collection of obligations due to respondent, and it tended to throw some light upon this inquiry to show that the agent had no authority to check upon an account deposited in the appellant bank to the credit of the respondent by the agent. Moreover, it was a matter properly to be shown as bearing upon the agent's general authority, and we think it not error to refuse to deny the motion to strike.

At the commencement of the trial, the court, at the suggestion of the respondent, ruled that the burden was upon the appellant to establish its non-liability to account to the respondent for the proceeds of the check; and, over the objection of the appellant, compelled it to assume the burden of proof. This in our opinion was manifest error. Clearly, had the appellant refused to introduce any evidence, judgment could not have gone against it on the pleadings, and this is one of the tests for determining on whom rests the burden of proof. This is made plain by a most cursory examination of the pleadings. The respondent, after averring the authority of Crane to make sales of its property on its behalf and to collect debts, dues and obligations accruing to it therefrom, and incidental authority to collect and receive and endorse for deposit checks drawn to the order of plaintiff, was forced to aver, in order to state a cause of action against the appellant, that his authority was limited in these respects, and to aver that the appellant had knowledge of these limitations. When, therefore, the appellant denied that any such limitations existed, and denied further that it had knowledge of any such limitations, if they did in fact exist, it was incumbent upon the respondent, before the appellant could be called upon to answer, to offer some proof tending to support them. Where agency is denied altogether, the

burden is upon the party alleging agency to prove it; but where, as in this case, an agency to deal with the particular subject of the inquiry is alleged or admitted, and a special limitation is relied upon to avoid liability for certain of the agent's acts concerning the matters with which he is authorized to deal, the burden is upon the party asserting the special limitation to prove it. *O'Daniel v. Streeby*, 77 Wash. 414, 137 Pac. 1025; 1 Clark & Skyles on Agency, § 206; 31 Cyc. 1644 (D) ; *Brett v. Bassett*, 63 Iowa 340, 19 N. W. 210; *Oak Leaf Mill Co. v. Cooper* (Ark.), 146 S. W. 130; *Nichols v. Oregon Short Line R. Co.*, 24 Utah 83, 66 Pac. 768, 91 Am. St. 778; *Planters' & Merchants' Bank of Mobile v. King, Upson & Co.*, 9 Ala. 279; *Lowry v. Atlantic Coast Line R. Co.*, 92 S. C. 33, 75 S. E. 278; *Merrill v. Bradley* (Tex. Civ. App.), 121 S. W. 561; *Wedge Mines Co. v. Denver Nat. Bank*, 19 Colo. App. 182, 73 Pac. 873.

The rule was not changed because of affirmative matter alleged in the answer. This may have introduced an additional issue into the case—the question whether Crane had been held out by the respondents as their general agent—but it did not cast the burden upon the appellant to show there were no such limitations upon the agent's authority as the respondent alleged existed.

It is next insisted that the court erred in denying the appellant's motion for a directed verdict in its favor. But we think our general statement of the nature of the evidence shows there was a question for the jury on each of the principal issues of fact made by the pleadings. There was proof sufficient for the jury that a special limitation had been imposed upon the agent with regard to his right to direct the disposition of the fund derived from checks payable to the principal, and that the appellant had knowledge of this limitation. Again, there was a question for the jury whether or not the funds derived from the particular check in question had not been first credited to the respondent's account, and afterwards diverted to the private account of the agent

contrary to the respondent's express instructions. It may be true that the officers of the respondent who testified to this fact testified from hearsay, but the stenographer testified that an officer of the bank told her that such had been the course of the funds received from the check, and this alone was sufficient to carry the question to the jury. It needs no argument, of course, to show that, under the conceded facts, had the appellant credited the amount of the check to the respondent's account and subsequently permitted the agent to withdraw the fund without the respondent's knowledge or assent, it would be liable to the respondent for the amount thereof.

The court gave to the jury, among others, the following instructions:

"(2) It is the law that a limited authority to endorse checks for deposit or collection only does not carry with it authority generally to assign or transfer title to the check from the payee. Hence, an endorsement on the back of the check of the payee's name by his agent may be for the limited powers only of depositing the check with the bank so that the bank can collect it, or such endorsement may be for the general purpose of transferring the title to the check. If the authority of Crane was limited to endorsing for deposit only to plaintiff's credit, then the bank had no right to place it to the credit of any person except that of the plaintiff; but if Crane had authority to endorse generally, not only for deposit but likewise for the purpose of negotiating or transferring title to said check, then the bank might have a right, dependent on the facts and the rule hereafter stated, to treat the check thus endorsed as having been transferred or assigned by plaintiff to Crane as Crane's personal property, to be controlled as Crane might direct.

"(3) You now grasp the sole issue or question in this case. What was the extent of Crane's real authority? When he received this check from Baillargeon it was plaintiff's check; title was in plaintiff. Crane had authority to endorse it for some purpose. If he had apparent authority to assign or transfer title from plaintiff to himself, then his endorsement made it in law his check and the bank was bound to

follow his direction and place it to his credit.  If he did not have authority to assign and transfer to himself title to the check, but had authority only to deposit it to plaintiff's credit; that is, if his endorsement was only for the purpose of depositing it and enabling the defendant bank to collect from the bank on which it was drawn, then his endorsement did not transfer title from plaintiff, but it was still plaintiff's check and the bank had no right after collecting the check to do anything with the money except to place it to the credit of plaintiff's account.

"(4)    This brings us to the question of Crane's authority. What was it?  Was it limited or general?  This is the question which you must determine from the evidence under the law as I give it to you.

"As between principal and agent, there can rarely be much difficulty in determining the power of such agent.  As between them, the agent is limited by and confined to the instructions which he receives from his principal.  He cannot exercise any authority beyond these specific instructions, and if he does he may be liable to his principal for exceeding his authority.

"Now while as between principal and agent, the principal is not bound by any act of the agent outside of the agent's instructions, yet as between principal and third persons dealing with the agent without notice of limitations upon his instructions, the principal may be bound by an act of the agent done outside of and in excess of the authority actually conferred on the agent.  As to third persons having no knowledge of the agent's limited powers, the agent's authority is not limited to the powers actually conferred, but it includes as well the apparent powers which the principal has caused or permitted the agent to seem to possess.  The principal's permission to his agent to act beyond his limited powers may be inferred by a course of conduct of the principal, or the course of dealing which the principal allows his agent to carry on.  If an agent in conducting his principal's business with third persons acts or pursues a course of dealing with the principal's permission, or if without such permission he does such acts or pursues a course of dealing which the principal afterwards having knowledge of, acquiesces in or does not repudiate, then third persons dealing with such agent and having no knowledge of his limited

powers, might be justified in believing that such and similar acts of the agent with reference to his principal's business are within the apparent scope of such agent's authority.

"As to third persons having no knowledge of the extent of the agent's powers, the question may not be—what was the actual authority conferred by the principal upon the agent? —but what was the apparent authority of such agent? What authority or power does the principal appear to hold him out as possessing or seem to allow him to exercise? Is the particular act in question an act within the apparent scope of the agent's power? Secret or private instructions to an agent, however binding they may be as between the principal and his agent, can have no effect on a third person who deals with the agent in ignorance of the instructions, and in reliance on the apparent authority with which the principal has clothed him. The apparent authority, so far as third persons are concerned, is the *real authority*, and when a third person has ascertained the apparent authority with which the principal has clothed the agent he is under no further obligation to inquire into the agent's actual authority.

"(5)   Now, there is another general rule of law, that an agent having even general authority to endorse the checks belonging to his principal may not transfer or assign title of such check to himself, thereby divesting his principal, without the knowledge and consent of his principal; and when an agent assigns or pretends to assign to himself a check belonging to his principal and then offers to transfer such check to a bank, such bank, if it has knowledge of the fact that the agent claims title from the principal by conveyance made by the agent to himself, is put upon notice of this general rule, and before it can safely accept such check and place the proceeds to the private account of such agent, should investigate or have knowledge sufficient to reasonably justify the conclusion that such agent had authority to make such transfer to himself.

"(6)   Now, in determining whether the particular act of Crane in this case, namely, the transferring the check to his own account, was or was not within the apparent scope of his authority, you have a right to consider all the facts and circumstances in the case. What was the connection of Crane with the business of plaintiff? What power has plaintiff

knowingly allowed Crane to hold himself out as possessing? What acts did Crane perform with the knowledge of the plaintiff and without plaintiff's dissent? What was the course of Crane's dealing with reference to checks of plaintiff? Was it his course to endorse for deposit to plaintiff's credit, or did he at any time exercise the authority to divest the title of plaintiff in any of their checks and transfer the same to himself without plaintiff's dissent? Had he on any occasion, instead of depositing checks to plaintiff's credit, cashed such checks or transferred the same to his own account without plaintiff's dissent? If it had been a part of his course of dealing to cash checks belonging to plaintiff or to transfer them to his own account instead of depositing to plaintiff's account, and without dissent on plaintiff's part, then the jury might be justified, in the absence of knowledge of the bank of the real power conferred, in finding that Crane's act in this particular instance was within the apparent scope of his authority. It all depends on what you believe the truth to be.

"(6½)   If you should find that the amount of this check was first placed to the credit of the Mott Iron Works in the bank and after being so placed was then transferred by the bank from the Mott Iron Works' account to the individual account of Crane, then in that case and on that state of facts the question of the extent of Crane's authority would be immaterial, for if the money was once placed to the credit of the Mott Iron Works, it could not be withdrawn from such account except upon check drawn by the Mott Iron Works and signed according to the signature cards in evidence. It is not claimed here that this money was placed in the account of Crane by virtue of any such check, and if it was previously placed to the credit of the Mott Iron Works, I instruct you that neither Crane nor the bank had any right to have it diverted to some other account, and if the bank did transfer it from the Mott Iron Works account to the Crane account, the bank would be responsible.

"(7)   Now the bank, admitting that it did not pay the money to the plaintiff directly, but claiming that this payment to Crane was upon plaintiff's order, the burden is cast upon the defendant to prove that Crane's act was within the apparent scope of his authority. It must establish this fact by a preponderance of the evidence in the case. Now, 'preponderance of the evidence' does not mean that there shall be

a greater number of witnesses on one side than on the other. Preponderance of the evidence does not depend · upon the number of witnesses. It means the greater weight of evidence. It means that evidence which carries to your minds greater convicting force than the evidence to which it is opposed. A good criterion is—What do you believe the probable truth to be? If from all the evidence in the case you believe that Crane's act was within the apparent scope of his authority, then the defendant has sustained the burden, and you should find for defendant. But if you are unable to determine what the probable truth is—whether his act was or was not within the apparent scope of his authority, then defendant has failed to prove his case by a preponderance of the evidence, and you must then find for the plaintiff in the sum of $4,231.21, with interest thereon at the rate of six per cent per annum from December 15th, 1910, or a total of $4,728.17."

Of the first instruction quoted, it is said that it is not a fair interpretation of the law in that it is assumed therein that the endorsement on the check here in question was a limited endorsement for deposit only, whereas the endorsement was actually a general endorsement; that it omits the element of knowledge by the appellant of the claimed limited authority on the part of the agent; and that, under the facts assumed in the latter part of the instruction, the appellant would unquestionably have a right to treat the endorsement as sufficient, whereas the court instructed the jury that they "might" have the right to so treat it. The first part of the objection, we think, is not well founded. The court was instructing as to a general rule, and it is not incorrect to say that a general endorsement on the back of a check of the payee's name by an agent may be for the limited powers only of depositing the check with the bank for collection on the principal's account. This would depend on how the bank receiving it understood the endorsement. In other words, a limited power in this respect, understood by both the agent and the person receiving the check, would not be extended by the form in which the endorsement is made. We

think, however, that the instruction is faulty in the other respects complained of, and, since there must be a new trial, it would be well to modify it in this regard if the exigencies of the new trial require an instruction on the particular subject.

The instruction numbered three has one of the faults of the prior instruction, in that it also omits all reference to the appellant's knowledge of the limitation upon the agent's powers. It may be that, in view of the matters stated in instruction numbered four, the fault here complained of would not necessarily be considered fatal. But since the question whether the appellant had knowledge of the agent's limited powers was one of the principal questions for determination by the jury, it were well to state the limitations when stating the other general rules governing the appellant's liability.

Instruction numbered four is faulty in that the court there also uses the word "might" instead of "would," in speaking of the condition which would justify the bank in believing that the agent possessed the powers he purported to possess.

The instruction numbered five, we think, is clearly erroneous. It is not a general rule of law that an agent having general authority to endorse checks belonging to his principal may not assign title of such check to himself. Nor is it a general rule of law in such a case that, when an agent does endorse a check with his principal's name and offers it for deposit to his private account in a bank, that the bank must inquire as to his authority to so deposit it before accepting the check on the pain of being liable to the principal for the proceeds of the check. An agent having general authority to endorse checks of his principal must of necessity have authority to direct the disposition of the proceeds of the checks. His authority in this respect can of course be limited; but, in the absence of limitations known to the person receiving checks so endorsed, such person has the right to assume that the agent's powers with reference to the dis-

position of the proceeds of the check are unlimited. One of the purposes of the endorsement is to enable the check to be collected from the payee, and a bank acting as collector of a check endorsed in the payee's name by an authorized agent may, without liability to the principal, turn the proceeds of the check over to any person it is directed so to do by the agent, unless it has knowledge, actual or implied, that the agent's authority is confined to a particular disposition of the proceeds of the check. "The principle which pervades all cases of agency, whether it be a general or special agency, is this: The principal is bound by all acts of his agent within the scope of the authority which he holds him out to the world to possess, although he may have given him more limited private instructions, unknown to the person dealing with him. And this is founded upon the doctrine that, where one of two persons must suffer by the act of a third person, he who has held that person out as worthy of trust and confidence, and having authority in that matter, shall be bound by it. It will be at once perceived, this doctrine is equally applicable to all cases of agency, whether it be the case of a general or of a special agent."

In the instruction numbered six the court again uses the word "might," where he should have used the word "would."

The instruction numbered six and one-half is objected to because not material to any issue in the case. We think, however, that it is clearly applicable to the fact suggested in the testimony of Crane's stenographer, namely, that the proceeds of the check were first deposited to the respondent's account, and subsequently transferred by the bank to the private account of Crane on Crane's request.

The instruction numbered seven is consistent with the ruling of the court to the effect that the burden was upon the appellant to prove that Crane acted within the scope of his authority. Since we have reached the conclusion that the court erred in so holding, it follows as of course that an instruction based upon that theory is also erroneous.

The errors assigned on the refusal of the court to give certain requested instructions, are sufficiently met by our discussion of the previous errors assigned, and require no special consideration.

The judgment is reversed, and the cause remanded for a new trial.

CROW, C. J., MOUNT, MORRIS, and PARKER, JJ., concur.