[No. 12780.   Department One.   April 19, 1916.]

MOTT IRON WORKS, *Respondent*, v. METROPOLITAN BANK, *Appellant*.[1]

APPEAL—REVIEW—DECISION—LAW OF CASE.   Where there is no material change in the evidence, a decision as to its sufficiency on a former appeal becomes the law of the case and conclusive on a second appeal.

APPEAL—REVIEW—INSTRUCTIONS.   Error cannot be predicated on the refusal to give instructions that are covered in the general charge.

PRINCIPAL AND AGENT—APPARENT AUTHORITY—ACTIONS—INSTRUCTIONS.   An instruction that a principal owes the duty to use "reasonable care" to oversee the acts of an agent with reference to his business is not prejudicial where the real point was that he was bound by the apparent authority which he knew, or reasonably should have known, the agent was assuming, and the same was covered by other instructions.

TRIAL—DELIBERATIONS—INSTRUCTIONS—REQUESTS.   Upon a request for further instructions, the court may refer the jury to written instructions answering the questions fully, permitted to go to the jury room by agreement of counsel, in the absence of request by counsel for anything more specific.

SAME—DELIBERATIONS OF JURY—INSTRUCTIONS.   Admonitions to a jury to consult together and make an effort to agree etc., are not prejudicial where there was nothing said calculated to coerce the judgment or lay the conscience of any reasonable juror.

Appeal from a judgment of the superior court for King county, Tallman, J., entered June 18, 1914, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract, after a trial on the merits.   Affirmed.

*Douglas, Lane & Douglas* and *G. E. de Steiguer*, for appellant.

*McClure & McClure*, for respondent.

ELLIS, J.—Action to recover the amount of a check drawn to the order of plaintiff, admittedly collected by defendant

[1]Reported in 156 Pac. 864.

and claimed to have been by it misapplied. The first trial resulted in a verdict and judgment for plaintiff. Upon appeal, that judgment was reversed and the cause was remanded for a new trial. The second trial had a like result. Defendant again appeals. The dominant facts, which are in no material particular changed or modified by the evidence on the second trial, are sufficiently stated in the opinion on the first appeal. The statement there, both as to pleadings and evidence, is by reference adopted as the statement here. *Mott Iron Works v. Metropolitan Bank,* 78 Wash. 294, 139 Pac. 36.

It is asserted that the court erred in denying appellant's challenge to the sufficiency of the evidence and in overruling its motion for a directed verdict. These matters are foreclosed by our former decision. Touching the same claim, we there found that the evidence presented a question for the jury on each of the principal issues of fact made by the pleadings. We said:

"There was proof sufficient for the jury that a special limitation had been imposed upon the agent with regard to his right to direct the disposition of the fund derived from checks payable to the principal, and that the appellant had knowledge of this limitation. Again, there was a question for the jury whether or not the funds derived from the particular check in question had not been first credited to the respondent's account, and afterwards diverted to the private account of the agent contrary to the respondent's express instructions."

If there has been any material change in the evidence, we have failed to discover it and appellant has failed to point it out. Under such conditions, we have uniformly declined to review questions of fact on a second appeal. As to the sufficiency of the evidence, the first appeal settled the law of the case. *Perrault v. Emporium Department Store Co.,* 83 Wash. 578, 145 Pac. 438, and the many cases there cited; *Smith Sand & Gravel Co. v. Corbin,* 89 Wash. 43, 154 Pac. 150; *Hoffman v. Watkins,* 89 Wash. 661, 155 Pac. 159.

It is next claimed that the court erred in refusing to give certain instructions requested by appellant. We have read with care these and, in connection therewith, the instructions as given. We shall not extend this opinion by a detailed comparison. Our examination convinces us that, so far as the requests contained correct statements of law as applicable to the evidence, they are copiously and clearly covered by the instructions given, though in different terms. Error cannot be successfully predicated upon mere forms of expression.

It is further urged that the court erred in the use of the words "reasonable care" in giving the following instruction:

"When the plaintiff put its agent in charge of its business it could not shut its eyes to his acts and escape liability therefor by secret instructions limiting his authority, if it did so. It is under a duty to use reasonable care to oversee how he conducts himself with reference to its business and all of his acts with reference thereto can be shown, whether actual knowledge of each particular act can be brought home to the principal or not."

This criticism seems over-technical. Taken in context, the words criticised do not minimize the duty of the principal to oversee the acts of the agent. The real point is that the principal is bound by every act of the agent within the scope of the apparent authority which the principal knew, or reasonably should have known, that the agent was assuming to exercise, regardless of any secret limitations. This was covered not only by the instruction quoted but by several others.

Basing the claim on the following incident, appellant insists that the court refused to instruct on questions of law propounded by the jury. After the jury had deliberated for some hours, it requested special instructions on the following points:

"(1) Was it necessary for the individual endorsement of H. M. Crane to be on the check in suit in order to transfer title to said check?

"(2) Was it necessary for the individual endorsement of H. M. Crane to be upon said check in order for him to deposit the same in his own account?"

Thereupon the court, addressing the jury, said:

"So far as this first question is concerned, with reference to the reading of the instructions, I should say first that counsel agreed that I might instruct you partly orally and partly in writing and that the instructions need not be written out and taken with you into the jury room. The main and important instructions were written out. They are not in the best shape. Some of it is written in my hand, some of it is interlined, and so forth, but you can gather from these what I said to you, and you will be permitted to take these with you to the jury room now under agreement of counsel. And the question you asked here, after reading certain portions you will find very plainly set forth in the instructions.

"As to the next question, 'Shall we consider the check as an endorsement of H. M. Crane as an individual' and so on, I cannot answer that question. That is one of the facts you have yourselves to decide under the evidence. I am not permitted under the law to tell you those things. The framers of our constitution saw fit to say that the court must not comment upon the evidence; that it must leave that entirely to the jury. The courts must be very particular about that or the supreme court will reverse what we do. I sometimes think that the framers of the constitution made a mistake in that regard, but whether or not they did, that is not for me to say at this time. Because it is the law, I am forbidden to comment upon or refer to anything such as you have called my attention to here.

"The next question comes under the same head as to the signing of H. M. Crane as an individual and so on. That is one of the questions that under the evidence and my instructions you must decide for yourselves."

Among the instructions which had already been given, and which it is stated without denial were thereupon taken by the jury into the jury room for further guidance and as answering these questions, were the following:

"You are instructed, members of the jury, that a check is a negotiable instrument, and that the title to a check or ne-

gotiable instrument is transferable by endorsement and de-
livery. By endorsement I mean the signature on the back of
the check, signed by the payee, by himself or by some author-
ized agent. A proper endorsement of the check by the payee
personally or by his authorized agent, accompanied with de-
livery thereof, transfers absolute title in and to that check to
the person receiving the same, who thereupon becomes the
holder and owner of the check.

"The title to the check in question in this case was in the
plaintiff and remained in the plaintiff until, by some act of
plaintiff or its authorized agent, the title passed to another.
If you find from the evidence that H. M. Crane as agent of
the plaintiff, without real or apparent authority from plain-
tiff, endorsed the check in question in the form shown by the
check, such endorsement and the delivery of the check to the
defendant had no effect on the title of the plaintiff  .  .  .

"It is the law that a limited authority to endorse checks for
deposit or collection only does not carry with it authority
generally to assign or transfer title to the check from the
payee. Hence, an endorsement on the back of the check of
the payee's name by his agent may be for the limited powers
only of depositing the check with the bank so that the bank
can collect it, or such endorsement may be for the general
purpose of transferring the title to the check. If the author-
ity of Crane was limited to endorsing for deposit only to plain-
tiff's credit, and if the bank knew of that fact, then the bank
had no right to place it to the credit of any person except
that of the plaintiff; but if Crane had authority to endorse
generally, not only for deposit but likewise for the purpose
of negotiating or transferring title to said check, then the
bank would have a right dependent on the facts and the rule
hereafter stated, to treat the check thus endorsed as having
been transferred or assigned by plaintiff to Crane as Crane's
personal property, to be controlled as Crane might direct."

It is obvious that these instructions answered the jury's
questions correctly and as fully as the court could have an-
swered them without assuming to determine for the jury
questions of fact as to the actual and apparent scope of the
agent's authority which were in a sense involved in the jury's
questions. We assume that the court stated the truth when

he told the jury that these instructions were permitted to be taken into the jury room at that time "under agreement of counsel." Counsel's attention to the court's purpose was then challenged by the remark that these instructions fully answered the questions. If anything more specific was desired, counsel should then have requested it. We find nothing prejudicial in this incident.

Before returning the jury to the jury room, the court admonished its members at considerable length to the effect that they should listen to each other, consult with each other, and make an effort to agree; that they should not be stubborn; that they need not be convinced beyond a reasonable doubt, but should bring in a verdict upon what might seem to them a fair preponderance of the evidence; this and much more to the same effect. It is urged that this tended to minimize the essential duty of a juror to return a verdict according to his own judgment and conscience. We have read the court's admonition with much care. We find nothing in it calculated to coerce the judgment or lay the conscience of any reasonable juror.

A careful consideration of the entire record convinces us that the appellant has had a fair trial. The judgment is affirmed.

MORRIS, C. J., MOUNT, and FULLERTON, JJ., concur.