[No. 16416.   Department Two.   July 8, 1921.]

ROBERT LINDSTROM, *Respondent*, v. SEATTLE TAXICAB COMPANY *et al., Appellants.*[1]

MUNICIPAL CORPORATIONS (383, 391)—USE OF STREETS—CONTRIBUTORY NEGLIGENCE OF PEDESTRIAN.   Where a pedestrian is placed in imminent danger through the wrongful and negligent act of an automobile driver, the question whether he acted with due prudence in avoiding the danger is one for the jury, in an action for personal injuries inflicted by being run down by the automobile.

TRIAL (120)—DELIBERATIONS OF JURY—COERCING AGREEMENT.   Coercion of a jury is not shown by the fact that the jury, after a day and night of deliberation, were brought into court and admonished by the judge not to be stubborn; not to be afraid to change their minds; that they should reason with one another; that the case had been well tried; that a disagreement would necessitate a new trial; and that the present jury should agree, if possible, though the judge took it upon himself to advance the admonition without any request from the jury for further instructions.

Appeal from a judgment of the superior court for King county, Tallman, J., entered December 11, 1920, upon the verdict of a jury in favor of the plaintiff, in an action for personal injuries.   Affirmed.

*W. A. Gilmore* and *Van Dyke & Thomas,* for appellants.

*Carl J. Smith* and *H. E. Foster,* for respondent.

TOLMAN, J.—Respondent as plaintiff brought this action to recover for personal injuries.   From a verdict against them in the sum of $2,000, and a judgment entered thereon, the defendants have appealed.

The only eyewitnesses to the accident who testified upon the trial, were the respondent and the appellant Erickson, the driver of the taxicab.   Respondent testified in substance that, at the time in question, he walked

[1] Reported in 199 Pac. 289.

down Fourth avenue, in the city of Seattle, to James street, where he stopped for an instant because there was an automobile passing in one direction, and a street car coming from the other; that he heard the brakes applied to the street car and knew it would stop before crossing the cable line on James street. He therefore proceeded to cross Fourth avenue on the crossing at the intersection with James street, keeping a lookout for approaching traffic. As he passed over the first street car track so that he could see to the east of the approaching car, he saw appellant's taxicab coming south on the left side of the street car, and on the east street car track, and distant from him some seven or eight feet. He had heard no sounding of a horn or other signal, and did not know of the approach of the taxicab until it was in close proximity to him. As to what then occurred he testified as follows:

"Q. And you say you took one long step? A. Yes, as soon as I saw that cab I took that big step. I thought I would make it anyway; but instead of going right straight ahead then he swing over to his left the same way I was going, and the car knocked me down. Q. How is that? A. As soon as I see, he swing that way, I stepped as far as I could, but the car grabbed me at the side and threw me down . . . Q. Are you able to tell the jury just what portion of the taxicab it was that actually hit your body, whether it was the door— A. Just about the door of the cab."

And again:

"Q. Did you hear the approach of the automobile until you got to the point 'H' when you first saw it at 'I'? A. No, sir, I did not hear it. Q. Are you able to tell the jury how far it was after you saw the automobile, that he commenced to turn further to the left? A. He was just about ten feet away from me. He was just close to me, and he thought I would back up, but

instead I ran ahead to get to the sidewalk. Q. What, if any, attempt did he make to slow up? A. He did not slow up. I did not see him slow up, or I would have made it. Q. What? A. He did not slow up. If he had slowed up I would have made it.''

Appellant Erickson fixes the place of the accident at a different point, between street intersections, where the taxicab would have had the right of way, and under circumstances tending to show that respondent was guilty of contributory negligence, but his testimony in the main, agrees with that of respondent to the effect that respondent was struck by, or ran into, the taxicab so that he came into contact with the body at or near the door of the taxicab.

While admitting that there was testimony from which the jury could have found that the accident happened at a street intersection, where respondent had the right of way, appellants contend that the evidence justifies only the conclusion that respondent ran into the taxicab, and that therefore their request for an instructed verdict, or their motion for a new trial should have been granted. We think, however, that this was a question for the jury. It must be borne in mind that, according to respondent's testimony he was placed in imminent danger through the wrongful and negligent act of the driver of the taxicab in passing to the left of the street car, and proceeding upon the wrong side of the street. As was said in *Sheffield v. Union Oil Co.*, 82 Wash. 386, 144 Pac. 529:

''Being in imminent danger, an emergency was presented, and whether, under this emergency, the respondent acted with due prudence is, under all the authorities, a question of fact for the jury. The law does not scrutinize too carefully an act done by one who has been put in a position of danger by the one who inflicts injury upon him, leaving it for the jury to say under such circumstances whether the act in

seeking to avoid the danger was the act of an ordinarily prudent man.''

The case was submitted to the jury during the forenoon of Friday, and, not having agreed upon a verdict on Saturday morning at 9:30 o'clock, the jury was brought into court, and the following took place:

''The court: Members of the jury: I have been informed that thus far you have been unable to agree. Am I right about that? Foreman: You are. The court: May I inquire how you stand? Don't tell which side you are for, but the number. How do you stand? Foreman: Eight to four. The court: It occurred to me, members of the jury, that a word from the court at this time might assist you. Jury duty is very difficult, of course. It is sometimes difficult for one man to make up his mind on a question. Therefore, I realize how difficult it is for twelve people to make up their minds on a certain subject sometimes. However, in my opinion it is not impossible and should not be impossible for you people to agree. There are a few things that you should keep in mind. In the first place, a juror should not be obstinate. A juror should not be stubborn. There is another way of putting it that is more forcible than elegant, a juror should not be bull headed. You must realize that there is nothing wrong or criminal about one changing one's mind after listening to the argument of other jurors, or a juror should not feel that because she or he voted one way once that he or she must never change her or his mind. If the other jurors convince you that you are wrong, don't be afraid to change your mind. The old saying that has gotten to be a proverb is that a wise man sometimes changes his mind, but a fool never does. Don't feel because you voted a certain way that you must not change your mind. Disagreements are very undesirable. This case will have to be decided by some twelve people, and some twelve people will agree, and they won't know in all probability any more about the case than you know about it. This case was well tried to you, and ably presented by the lawyers on both sides.

Everything was brought out in all probability that could be brought. out; so some twelve people will have to decide this case, and I see no reason why you twelve people should not decide it. You should agree, if possible, and I think it is possible for you to agree. Reason one with the other. Don't go away and obstinately sit down and say I voted and I will vote that way until the stars fall. That isn't the position to take. Talk the matter over and continue to talk it over. Don't all talk at one time, but reason together and see if someone isn't wrong, and agree, if possible, and I think it is possible for you to agree. I want to repeat, some twelve people will decide this case, and why can't you twelve people? You look to me to be reasonable men and women, and I see no reason why you should not decide this case. Now, members of the jury, go back and see if you can't agree upon a verdict."

Shortly after again retiring the jury returned the verdict upon which judgment was entered. It is contended that in this the court seriously erred, and that not having asked for further instructions, the court's interference was an assault upon the minds and consciences of the jurors, which amounted to coercion. We had occasion to pass upon a somewhat similar case in *Mott Iron Works v. Metropolitan Bank,* 90 Wash. 655, 156 Pac. 864, where it was said:

"Before returning to the jury room, the court admonished its members at considerable length to the effect that they should listen to each other, consult with each other, and make an effort to agree; that they should not be stubborn; that they need not be convinced beyond a reasonable doubt, but should bring in a verdict upon what might seem to them a fair preponderance of the evidence; this and much more to the same effect. It is urged that this tended to minimize the essential duty of a juror to return a verdict according to his own judgment and conscience. We find nothing in it calculated to coerce the judgment or lay the conscience of any reasonable juror."

It is true that there additional instructions were asked for and the court's admonition was limited by the statement that the jurors should base their verdict upon what might seem to them to be a fair preponderance of the evidence. In a proper case, whether or not additional instructions were requested, a reasonable admonition to agree, if possible, is permissible, though care should always be exercised not to cause any juror to disregard or abandon his honest convictions as to what is established by the evidence, and agree to a verdict which he honestly believes to be unsupported by a preponderance of the evidence. The inquiry as to how the jury stood, followed by the language used by the court in this case, is not to be commended, and while it is possible that the judgment of some juror might have been overborne thereby, yet, in view of the court's previous instructions, still before the jury giving the correct rule for its guidance, we cannot assume that any juror was improperly influenced or coerced by what was said.

We have examined with care the errors assigned upon the giving and refusal to give instructions, but cannot discuss these matters in detail without unduly extending this opinion. It is sufficient to say that we find no reversible error therein and that, taken as a whole, the instructions given fairly advised the jury as to the law applicable.

Judgment affirmed.

PARKER, C. J., HOLCOMB, MAIN, and MITCHELL, JJ., concur.