[No. 16736. Department One. January 6, 1922.]

THE STATE OF WASHINGTON, *Respondent,* v. INGRAM
RADER, *Appellant.*[1]

HOMICIDE (110-112)—TRIAL—INSTRUCTIONS—JUSTIFICATION. In a
prosecution for homicide, where the defense was that the act was
justifiable, the omission by the court of the element of justification
in its charge to the jury defining the degrees of murder was error,
notwithstanding an attempt in later instructions to define justifiable
homicide.

SAME (110, 111-1)—JUSTIFIABLE HOMICIDE—INSTRUCTIONS—MIS-
LEADING INSTRUCTIONS. In a prosecution for homicide where there
was no evidence that the deceased had endeavored to withdraw from
the fight, nor that the killing was done through motives of anger or
fear after a change of circumstances had freed the defendant from
danger, an instruction that under such circumstances the killing
was not justifiable was misleading and erroneous, as assuming facts
not in the case.

SAME (14-18) — JUSTIFIABLE HOMICIDE — SELF-DEFENSE—DUTY OF
DEFENDANT. A person on his own premises may defend himself
from an unprovoked assault with any means within his command
even to taking the life of his assailant, if the assault is of such a
nature as to cause him reasonably to believe that he is in danger
of his life or of great bodily harm.

SAME (121)—TRIAL—INSTRUCTIONS—GRADE OR DEGREE OF OFFENSE
—NECESSITY. In a prosecution for murder in the first degree, it is
error to refuse a requested instruction in the language of Rem.
Code, § 2308, that where an offense has been proved against a person
and there exists a reasonable doubt as to which of two or more de-
grees he is guilty, he shall be convicted only of the lowest; and
the same is not cured by a verdict of second degree murder, since
manslaughter is a degree within the crime of murder.

CRIMINAL LAW (306)—TRIAL—ABSTRACT INSTRUCTIONS. An in-
struction in a criminal case upon confessions and admissions is
erroneous, though correct as a proposition of law, where there is
no evidence justifying such instruction.

Appeal from a judgment of the superior court for
King county, Hall, J., entered January 11, 1921, upon
a trial and conviction of murder. Reversed.

[1]Reported in 203 Pac. 68.

*John F. Dore,* for appellant.

*Malcolm Douglas* and *John D. Carmody,* for respondent.

Fullerton, J.—The appellant, Rader, was informed against for murder in the first degree, for killing one Bud Dean Curtis. At the trial, the jury returned a verdict finding him guilty of murder in the second degree. This appeal is from the judgment and sentence pronounced on the verdict.

The errors assigned relate solely to certain instructions given by the court to the jury, and to the refusal of the court to give certain requested instructions. To an understanding of the pertinency of the objections made, a brief review of the facts is necessary. In the early part of the year 1920, the appellant, together with one Knight, was engaged in the wood business near Lake City, in King county, under the firm name of Ranight Fuel Company. Near the middle of January, 1920, Curtis and his wife entered the employment of the company. Curtis worked in the woods, and Mrs. Curtis kept the books of the concern, and with her sister, Mrs. Patterson, whose husband was also in the employ of the company, attended the telephone calls. Mrs. Curtis seems also at times to have worked at manual labor in the wood yard. On February 8, following, Curtis and Patterson quit the employment of the fuel company, leaving their wives at the fuel company's place of business; the wives continuing in the duties they had theretofore performed. Between this time and the time of April 2, 1920, both Curtis and Patterson visited their wives, but whether once or more the evidence of the wives disagrees. It is in evidence, however, that Curtis came to the place of business on the Friday of April 2, and in the presence of Mr.

Knight, Mrs. Patterson and the appellant, endeavored to persuade Mrs. Curtis to go away with him. On her refusing so to do, he turned to the appellant and accused him of interfering with his family affairs, saying to the appellant that he had broken up his home, and that when he came for him he would need his gun. Curtis then packed certain of his personal belongings in a valise and left the place. He returned the next day shortly before the noon hour, in the company of a truck driver who came to the place for wood. At this time Mrs. Curtis was working in the wood yard ricking wood. The appellant was driving a team, dragging logs from the woods into the wood yard. Several other persons were engaged in duties in and about the yard. Curtis, on reaching the yard, got down from the truck, went over to his wife and engaged in a conversation with her. While so conversing, the appellant came into the yard driving the team. Curtis started towards him, saying, "Rader, get your gun, I am coming after you," pulling off his coat at the same time. The appellant apparently made no effort either to get away or defend himself, and Curtis on reaching him struck him, knocking him down. Curtis then turned to his wife, put his arm around her and entreated her to go away with him. The appellant then got up, went to his office tent some distance away and procured a revolver, which he put into his pocket. He then returned to the wood yard. Curtis in the meantime had gone to the loading platform and was assisting the truck driver mentioned in loading the truck with wood. When he saw the appellant returning, he got down from the loading platform and started towards the appellant. The appellant turned to one side, telling Curtis to keep away. Curtis continued his advance, when the appellant took the revolver from his pocket, telling him to stop. Curtis kept

advancing, at the same time picking up rocks and sticks and hurling them at the appellant. The appellant then fired three shots, the third of which struck Curtis in the groin. Curtis was then close upon the appellant, and lunging forward, grabbed him around the lower part of the body and raised him from the ground. While in this position the appellant fired two shots into Curtis' back; Curtis dying from the effects of the shots a few hours thereafter.

The foregoing facts are gathered from the testimony of the witnesses for the state; the appellant did not testify himself, nor did he call any witnesses on his own behalf.

The statute defines homicide as follows (Rem. Code, § 2390; P. C. § 8995):

. "Homicide is the killing of a human being by the act, procurement or omission of another and is either (1) murder, (2) manslaughter, (3) excusable homicide or (4) justifiable homicide."

Murder in the first and second degrees is defined, in so far as the definitions are applicable here, in the following language (See Rem. Code, §§ 2392, 2393):

"The killing of a human being, unless it is excusable or justifiable, is murder in the first degree when committed . . . with a premeditated design to effect the death of the person killed. . . ."

"The killing of a human being, unless it is excusable or justifiable, is murder in the second degree when . . . committed with a design to effect the death of the person killed, . . . but without premeditation, . . ."

Manslaughter is defined (Rem. Code, § 2395; P. C. § 9000):

"In any case other than those specified . . . homicide, not being excusable or justifiable, is manslaughter."

The appellant, in writing, requested the court to instruct the jury in the statutory language on the different degrees of homicide. This the court declined to do, but gave the following:

"Under the laws of this state the killing of a human being is murder in the first degree when committed with a premeditated design to effect the death of the person killed.

"Premeditated means thought over beforehand and for any appreciable length of time, however short. When a person, after any deliberation, forms a design to take human life, the killing may follow immediately after the formation of the settled purpose and it will be murder in the first degree. The law requires some space of time in which a design to kill is deliberately formed.

"Murder in the second degree, is the killing of a human being when committed with a design to effect the death of the person killed but without premeditation.

"The killing of a human being, unless it is excusable or justifiable, is manslaughter when it is committed without design to effect death and without premeditation.

"Before you are entitled to find the defendant guilty of murder in the first degree, as charged in the information, the state must convince you beyond a reasonable doubt of all the following elements of that crime:

"1. That the defendant, on or about the 3rd day of April, 1920, did shoot and inflict wounds upon Bud Dean Curtis with a revolver pistol;

"2. That the defendant did this act with a premeditated design to effect the death of said Bud Dean Curtis;

"3. That as a result of the said wounds so inflicted the said Bud Dean Curtis died on or about said 3rd day of April, 1920;

"4. That the said act upon the part of the defendant occurred in King county, state of Washington.

"If you find from all the evidence admitted in this case that the state has proved beyond a reasonable

doubt each and all of the foregoing elements of the crime charged in the information, then it will be your duty to return a verdict of guilty of murder in the first degree, so charged in the information herein.

"Everyone is presumed to intend the natural and necessary consequences of his actions. If one kills another he must, in the absence of a showing to the contrary, be presumed to have intended to kill him. So, if you find from the evidence beyond a reasonable doubt that the defendant killed Bud Dean Curtis, as charged in the information, then the presumption of law is that the defendant is guilty of murder in the second degree; and before you would be justified in rendering a verdict of murder in the first degree, the state must establish beyond a reasonable doubt the additional element that the shooting was done with a premeditated design to effect the death of said Bud Dean Curtis."

Nothing further was said in the instructions concerning the crime of manslaughter, other than that a verdict of manslaughter was one of the verdicts the jury were warranted in returning.

The appellant complains of these instructions, we think justly. Murder in any form is the felonious killing of a human being. It is a killing without justification or excuse, yet all reference to this element is omitted by the court in its definition of murder in the first and second degrees. Under the instructions as given, the appellant could have been found guilty of murder either in the first or in the second degree, no matter how clear his justification for the killing might appear. Nor does the instruction contain any reference to the fact that there are modifications to the positive precepts there laid down. The omissions are especially harmful in the present case. The killing was admitted; the sole contention being that it was justifiable. The facts were such that the jury could have found, without a violation of its oath, that the killing was justifi-

able. Plainly, we think the appellant was entitled to have the element of justification called to the attention of the jury in its definitions of the degree of murder, especially since he in writing requested it.

It is true that later on in its instructions the court did attempt to define justifiable homicide, but we cannot think this in any way cured the defect in the original instruction. It was given as an independent instruction without reference to the previous instruction, and consequently without indication that it was a modification of the previous instruction. Indeed, the jury were not even told that, if they found the particular killing justifiable within the principles announced, they should find the appellant not guilty. Moreover, the instruction was faulty in another respect. It announced principles, correct enough perhaps in the abstract, yet principles which had no bearing upon the facts of the particular case. A part of the instruction was as follows:

". . . and if a man is assaulted by another, no matter how bad or violent the character of the assailant, or how menacing his actions, or how imminent the danger may have been at one time during the affray, yet if the danger, once so apparently present and actual, has ceased, or if the assailant has in good faith endeavored to withdraw from the fight and there is no longer good reason for believing that the threatened danger exists, then the assailed who kills thereafter, when there is no reasonable ground, under the circumstances, for apprehending danger at the time of the killing, would not be justified. There may be, and are, cases and affrays wherein a slayer might be justified in slaying at one time during the affray, and not having done so, the circumstances may have been so changed that a slaying later, even though during the same affray, might not be justifiable. A man who has been assaulted ever so violently and whose life may have been in ever so great a danger, but who has not struck

the fatal blow, and who by reason of a change in circumstances may be reasonably freed from the threatened danger, would have no right, after being thus freed from danger, to kill through motives of anger or fear, or of apprehension that at some time in the future he might be again the victim of assault.''

This, it seems to us, could easily be misleading. The language is too general to apply to any fact in the case in hand. There is in the record no evidence that the assailant had at any time, in good faith or otherwise, endeavored to withdraw from the fight, nor is there any evidence that the killing was done through motives of anger or fear after a change in the circumstances had freed the appellant from danger. On the contrary, the evidence showed that the person killed was the aggressor in both assaults, and that he was killed while actually engaged in the second assault, and at a time when the jury could well have found that his manner and conduct indicated that his purpose was to inflict upon the appellant great bodily harm. A charge assuming that the facts were different from these was improper, and, as we have suggested, liable to a misleading interpretation on the part of the jury. It may be that the court gave the instruction because of the fact that the appellant left the scene of the affray after the first assault and returned later with a deadly weapon in his pocket. But if the instruction was intended to cover this phase of the case, the language was inappropriate. Whether this was a wrongful act upon the part of the appellant depends upon his purpose in so returning. If his intent in returning was to provoke another assault, and use that as an excuse for killing his assailant, then the killing was not justifiable. If his purpose was to pursue his ordinary business and use the weapon only in the case of an assault upon

him, putting him in danger of his life or great bodily harm, then his act was justifiable. A man may lawfully go where he has the right to go. He does not have to abandon or keep away from his place of business merely because another is there bent upon doing him a bodily harm. Nor is any man required to engage in a physical combat with another. While he has no right to provoke an assault, he may defend himself from an unprovoked assault with any means within his command, even to taking the life of his assailant, if the assault is of such a nature as to cause him reasonably to believe that he is in danger of his life or of great bodily harm. In the present case, an instruction covering these features might have been appropriate. But it should have been given in language capable of direct application, not in the very general language used by the court.

The statute (Rem. Code, § 2308; P. C. §9139) provides:

"Every person charged with the commission of a crime shall be presumed innocent until the contrary is proved by competent evidence beyond a reasonable doubt; and when an offense has been proved against him, and there exists a reasonable doubt as to which of two or more degrees he is guilty, he shall be convicted only of the lowest."

The appellant requested an instruction couched in the foregoing language. This the court declined to give as a whole, giving only that part of it which relates to the presumption of innocence. This was error, and was not cured by the verdict returned. Manslaughter is a degree within the crime of murder, and the request was not only within the statute, but within the general rule of law.

The court gave an instruction upon confessions and

admissions, of which the appellant complains. The complaint is that there was no evidence justifying such an instruction. With this we agree. Nothing bearing upon the nature of a confession or admission was shown, and while the instruction was correct in the abstract, it should not have been given. An abstract instruction, however correct it may be as a proposition of law, does not enlighten the jury as to the law of the particular case. Such an instruction is not, of course, always so far prejudicial as to require reversal, yet it can have no other tendency, and this furnishes the reason for its avoidance.

Other instructions are complained of, one of which was given at the request of the defendant. Of the first, it is sufficient to say that we find no error in them; and of the second, that it is not a matter of which the appellant can here complain.

For the errors indicated, the judgment is reversed and a new trial awarded.

PARKER, C. J., MITCHELL, BRIDGES, and TOLMAN, JJ., concur.