[No. 36530.    Department One.    October 10, 1963.]

THE STATE OF WASHINGTON, *Respondent*, v. HAROLD OSCAR
THOMAS, *Appellant*.*

*Reported in 385 P. (2d) 532.

*W. D. Palmer, Sr.*, for appellant.

*Charles O. Carroll* and *James E. Kennedy*, for respondent.

HUNTER, J.—This is an appeal from a judgment of conviction on two counts, the crimes of murder in the second degree and assault in the first degree. This case was retried after we reversed and remanded it for a new trial in *State v. Thomas*, 58 Wn. (2d) 746, 364 P. (2d) 930 (1961).

The defendant (appellant), Harold Oscar Thomas, and Sylvia Wilfong Carrier were social companions from the summer of 1958 until her marriage to Ray Walter Carrier on October 30, 1959. The defendant became jealous and in November, 1959 he went to the Carrier home and menaced her with a revolver. Slyvia Carrier testified that at other times he followed her in a car as she drove in the area and, on three occasions, he attempted to run her off the road. On the night in question, February 2, 1960, she saw him watching her through the window of a classroom where she was attending night school. Later in the evening, as she was driving her husband home, she saw the defendant drive by and followed his car so that her husband could ask him about the foregoing incidents. The defendant drove away from the main area of town, stopped his car, and the Carrier car stopped behind his vehicle. Both Sylvia and Ray Carrier walked beside the defendant's car and the defendant, being armed with a pistol, fired several shots, mortally wounding Ray Carrier and wounding Sylvia Carrier.

At the trial the defendant relied on self-defense to justify this homicide. He introduced evidence to show that when the Carrier vehicle stopped behind his car, the decedent walked up to the left side of the defendant's car, opened the door and grabbed the defendant's clothing at the left shoulder; that in fear of grievous bodily injury he fired at the assailant. From the defendant's conviction, this appeal followed.

The defendant first assigns error to the introduction of evidence as to his participation in an escape from the King County Jail while awaiting the outcome of this cause.

Although evidence of flight is insufficient in itself to establish guilt, the rule is well established that it may be taken into consideration with all the other facts and circumstances of the case in determining whether a person charged with a crime is in fact guilty. *State v. Lew*, 26 Wn. (2d) 394, 174 P. (2d) 291 (1946); *State v. Wilson*, 26 Wn. (2d) 468, 174 P. (2d) 553 (1946); *State v. Moser*, 37 Wn. (2d) 911, 226 P. (2d) 867 (1951); 20 Am. Jur. 276, § 298.

The trial court did not err by allowing the introduction of this evidence.

The defendant argues, however, that the escape was too remote to justify any inference of guilt. We do not agree. The escape occurred during his imprisonment pending trial of this case, 8 months after the date of the crime charged. He was not incarcerated for any other reason. *Cf. Bird v. United States*, 187 U. S. 118, 47 L. Ed. 100, 23 S. Ct. 42 (1902).

The defendant further argues that, assuming the evidence of flight was admissible, the giving of instruction No. 35 was unnecessary and therefore overemphasized the evidence on this issue. We find no merit in this argument. It was proper for the jury to be instructed on the law as to its consideration of this evidence.

The defendant assigns error to instruction No. 5, which states in part:

"You are instructed that in the event you find the defendant killed the said Ray Walter Carrier, *and that the killing was neither excusable nor justifiable,* then you must determine of which degree of crime the defendant is guilty, whether of murder in the second degree or manslaughter. . . ." (Italics ours.)

The defendant contends that the instruction is improper because it fails to define the terms "excusable" and "justifiable" within the instruction itself, or in a close sequence thereto. In support of his contention, the defendant relies on *State v. Rader*, 118 Wash. 198, 203 Pac. 68 (1922).

62

We do not find the *Rader* case applicable to the contention raised in the instant case. In the *Rader* case, the instruction defining murder failed to exclude the possibility of justifiable or excusable homicide. Therefore, later instructions defining the terms "excusable" and "justifiable" could in no way cure the defect because the instruction defining murder made no reference thereto. In the instant case, however, instruction No. 5 contains the terms "excusable" and "justifiable" and out of necessity must refer the jury to instructions No. 23 through No. 31 which exhaustively instructed the jury as to the meaning of those terms.

█ Although it may have been more desirable, it was not necessary for the court to give its instructions relating to the terms "excusable" and "justifiable" immediately following instruction No. 5. Instructions should be considered in their entirety; and when so considered, if they properly state the law, they are sufficient. *State v. Refsnes*, 14 Wn. (2d) 569, 128 P. (2d) 773 (1942).

█ The defendant assigns error to the use of the word "fear" in instruction No. 6, which read in part:

"The intentional killing of a human being resulting from sudden heat or passion, excitement, hatred or fear, is murder in the second degree."

He contends "fear" is an element of justifiable homicide and the use of this word excludes the theory of self-defense.

RCW 9.48.170 states that homicide is justifiable

". . . when there is reasonable ground to apprehend a design on the part of the person slain to commit a felony or to do some great personal injury to the slayer . . . and there is imminent danger of such design being accomplished . . ."

"Fear" is not an element in our justifiable homicide statute. The rule in the statute is that one must have reasonable ground to apprehend imminent danger of great personal injury. One may fear another without apprehending the existence of this imminent danger, which is an essential element to the defense of justifiable homicide.

The defendant assigns error to instruction No. 10. He contends the trial court erred in defining the element of

intent in the crime of second-degree murder by its failure to state in the instruction that the defendant *unlawfully* ". . . inflicted mortal wounds upon the body of the said Ray Walter Carrier . . ."; and that he was thereby denied the defense of justifiable homicide.

We find the contention is without merit. The court recognizes this defense in the concluding language of the instruction: ". . . unless you find that such killing was justifiable."

█ The defendant assigns error to the giving of instruction No. 9, which states that where a homicide is proved beyond a reasonable doubt, there is a presumption of second-degree murder and it is incumbent upon the defendant to show such homicide to be manslaughter. The defendant contends this instruction shifts the burden of proof from the state to the defendant, in contravention of Art. 1, § 3, of the constitution of the state of Washington. The rule propounded by instruction No. 9 has often been upheld by this court as proper and we see no reason for departure in the instant case. *State v. Sill*, 47 Wn. (2d) 647, 289 P. (2d) 720 (1955); *State v. Gallagher*, 4 Wn. (2d) 437, 103 P. (2d) 1100 (1940); *State v. Turpin*, 158 Wash. 103, 290 Pac. 824 (1930). We adhere to the reasoning of *State v. Payne*, 10 Wash. 545, 39 Pac. 157 (1895), in which we said:

". . . Every one is presumed to intend the natural and necessary results of his actions. If he kills another he must, in the absence of a showing to the contrary, be presumed to have intended to kill him. . . . Without such presumption to aid the prosecution it might happen that two persons would be alone in a room, and one kill the other, without any justification whatever, and yet the prosecution be utterly unable to secure his conviction, for the reason that there was nothing to show the circumstances surrounding the killing. . . ."

The defendant further contends that by reason of this instruction the jury was not adequately instructed upon the presumption of the defendant's innocence.

We disagree with this contention. The jury was fully instructed on the presumption of innocence in the court's

general definition instruction on this fundamental right of an accused.

▆ The defendant assigns error to the giving of instruction No. 15, which was based on RCW 9.41.030. The instruction states in part:

" . . . in the trial of a person for committing or attempting to commit a crime of violence, the fact that the defendant is armed with a pistol and had no license to carry same shall be prima facie evidence of his intention to commit such crime of violence."

He contends that such an instruction violates his constitutional rights. The defendant raised this contention in *State v. Thomas*, 58 Wn. (2d) 746, 364 P. (2d) 930 (1961). We there said:

"We hold that there is a rational connection between carrying pistols without a license and intending crimes of violence, and, consequently, the questioned statute [RCW 9.41.030] is constitutional. The evidence, that the defendant had in his possession a pistol which he had no license to carry, was admissible."

The defendant contends, however, that the trial court did not follow the mandate of this court given in *State v. Person*, 56 Wn. (2d) 283, 352 P. (2d) 189, 81 A.L.R. (2d) 1088 (1960), cited in the *Thomas* case, when defining "prima facie evidence." In the *Thomas* case, *supra*, we said:

"If on a retrial an instruction, based on this statute [RCW 9.41.030], is given, it must make clear that no such burden is imposed upon the defendant and that the jury need give the fact that he had in his possession a pistol, for which he had no permit, only such weight on the issue of intent as it seems to it to merit."

Instruction No. 15 concludes with the following language:

" 'Prima facie evidence' means evidence which may be accepted for the proof of a particular fact. Such evidence should be given just such weight as it seems to you to merit. You are not bound to accept it."

This language complies with our direction in the *Thomas* case, and we find it was used properly in instruction No. 15.

The defendant assigns error to instruction No. 32:

"You are instructed that no man can by his own lawless acts create a necessity for acting in self-defense and thereupon assault and injure or kill the person with whom he seeks the difficulty, and then interpose as a defense the plea of self-defense. Self-defense is the plea of necessity as shield only to those who are without fault in occasioning an affray, and acting under it. Therefore, if you find from the evidence beyond a reasonable doubt that the defendant was the aggressor and that by his own acts and conduct he provoked or commenced the affray, then the plea of self-defense is not available to him."

The defendant contends this instruction was unnecessary and prejudicial because there was no evidence submitted that showed Mr. Thomas had committed any unlawful acts which might have occasioned the affray. This contention is not supported by the record.

As previously stated, several months prior to the killing, the defendant began following and harassing Slyvia Carrier when she traveled alone in her car. Several times he had tried to run her off the road, and on one occasion, approximately 90 days prior to the shooting, he had gone into her home and threatened her life with the murder weapon. The defendant was jealous of Ray Carrier. Moreover, when the decedent and Sylvia began to follow him, instead of driving downtown where he could seek aid, he drove to a lonely part of town and stopped his car. It was this course of conduct of harassment by the defendant, following his felonious threats upon the life of Sylvia Carrier, that occasioned the decedent to confront the defendant at the scene of the shooting. This conduct placed the defendant in the role of an aggressor and the cause of the affray sufficient to raise a jury question on this issue. There was sufficient evidence to justify the court in giving instruction No. 32. See *State v. Wilson*, 26 Wn. (2d) 468, 174 P. (2d) 553 (1946); *State v. Turpin, supra.*

The defendant finally assigns error to the trial court's instruction "A":

"It is very desirable that you reach a verdict in this case. The law requires that your conclusion shall be unanimous.

It is not required that any one of you should surrender his or her individual freedom of judgment, but it is well that each of you should have in mind that your verdict cannot ordinarily be reached except by mutual consideration and discussion of all the different views that may suggest themselves to any of your number. The jury room is no place for pride of opinion. A verdict which is the result of real harmony, or that growing out of open-minded discussion between jurors, and a willingness to be convinced, with a proper regard for the opinion of others, and with a reasonable distrust of individual views not shared by their fellows, is a fair yielding of one reason to a stronger one. Such, having in mind the great desirability of unanimity, is not open to criticism. The law contemplates that jurors shall, by their discussions, harmonize their views, if possible, but not that they shall compromise with their consciences and yield for the mere purpose of agreement, nor that the minority shall necessarily yield to the majority."

The record shows the jury retired at 3:10 p.m. and deliberated until 10:45 p.m. that night. It reconvened at 9 a.m. the next morning and at 9:30 a.m. the judge called the jury in and gave it the above instruction.

In *State v. Bolen*, 142 Wash. 653, 254 Pac. 445 (1927), this court held that such an instruction was proper in a situation such as this. In that case the court said:

"This same instruction seems to have been first given under similar circumstances as reported in *Commonwealth v. Tuey*, 8 Cush. (Mass.) 1, where it was entirely approved. Practically the same instruction was again reviewed in *Allen v. United States*, 164 U. S. 492, and in *Territory v. Donahue*, 16 N. M. 17, 113 Pac. 601, and approved. We are unable to see anything in the instruction prejudicial to the appellant."

See, also, *Tacoma v. Kitchen*, 146 Wash. 583, 264 Pac. 12 (1928); *Lindstrom v. Seattle Taxicab Co.*, 116 Wash. 307, 199 Pac. 289 (1921); *Mott Iron Works v. Metropolitan Bank*, 90 Wash. 655, 156 Pac. 864 (1916).

It is the duty of the court to encourage the jury to agree. The law contemplates that the jurors shall harmonize their views, if possible, providing they do not compromise with their consciences and yield to the majority for the mere purpose of agreement. *State v. Ring*, 52 Wn. (2d) 423, 325

P. (2d) 730 (1958); *State v. Johnson*, 53 Wn. (2d) 666, 335 P. (2d) 809 (1959); *State v. Parks*, 56 Wn. (2d) 555, 354 P. (2d) 383 (1960).

We find no prejudice to the defendant by the giving of the instruction or the manner in which it was given. We feel, however, that it would be better practice for such an instruction to be given at the time the other instructions are given in the case, to avoid the possibility of placing more emphasis on one instruction than on the others. Moreover, it would seem that it might be better if the jury had this instruction at the beginning of its deliberations, if it is to be given.

We are satisfied the defendant received a fair trial. The judgment is affirmed.

OTT, C. J., HILL, and HALE, JJ., and MURRAY, J. Pro Tem., concur.

*Reported in 385 P. (2d) 530.