[No. 1726-2.    Division Two.    September 7, 1976.]

THE STATE OF WASHINGTON, *Respondent*, v. DONALD LEVI UPTON, *Appellant*.

196

*Edward G. Holm,* for appellant (appointed counsel for appeal).

*Patrick D. Sutherland, Prosecuting Attorney,* and *Henry McCleary, Deputy,* for respondent.

PEARSON, J.—The defendant, Donald Upton, appeals from a conviction of second-degree assault with a special finding that he was armed with a deadly weapon. Five issues are presented on appeal: (1) whether a mistrial should have been declared after defendant was cross-examined about his failure to tell law enforcement officers he had acted in self-defense; (2) whether psychiatric opinion testimony was properly excluded; (3) whether defendant's testimony as to third-party statements regarding the victim's violent nature was properly excluded; (4) whether the defendant should have been provided with a copy of the victim's FBI "rap sheet"; and (5) whether the court's self-defense instruction was erroneous. For the reasons stated below, we find defendant was unduly prejudiced when the State brought his post-arrest silence regarding his claim of self-defense to the attention of the jury. The judgment and

sentence is therefore reversed and the case remanded for a new trial.

On November 20, 1973, defendant and his nephew, George Upton, became involved in a heated argument over business matters. There was a brief fight in George Upton's office, which was terminated by the intervention of a third party. Defendant left George Upton's office, went to his apartment where he picked up a .22 caliber derringer, and then set out to find George Upton, allegedly to deter him from coming to the defendant's apartment. Several blocks away the two men met, where defendant got out of his car and went to the side of George Upton's vehicle. After the men had a brief discussion, defendant shot George Upton, wounding him in the lip. More discussion ensued, after which the wounded man drove himself to the hospital and the defendant returned to his apartment, where he was arrested a short while later.

The arresting officers, Thurston County Sheriff's Deputies, read defendant his *Miranda* rights, which defendant indicated he understood. Nevertheless, he made a few comments about the incident, but did not mention self-defense. The deputies, however, made no attempt to obtain a statement from the defendant, since the matter was being handled by the Olympia Police Department. When Olympia police officers arrived at the apartment they did not undertake to elicit a statement from the defendant. When he offered to "tell you guys what happened" the officers told him to wait until he got to the station. Thereafter, relying on his right to silence, defendant made no further statements to the police regarding the incident.

At trial, the prosecution on cross-examination sought to impeach defendant's claim that he had shot George Upton in self-defense by questioning him about his failure, after receiving his *Miranda* warnings at the time of his arrest, to tell law enforcement officers he had shot George Upton in self-defense. Defendant's motion for a mistrial on the basis that the questions violated both his due process rights and a pretrial restriction on introducing the silence evidence

was denied. We hold the use of defendant's post-arrest silence for the purpose of impeaching his plea of self-defense violated the due process clause of the Fourteenth Amendment and constituted reversible error. *Doyle v. Ohio,* 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976).

During the State's cross-examination, no objection was made to the prosecutor's inquiries about defendant's post-arrest silence on his claim of self-defense until he had been asked and had answered several of the questions. The State argues that the objection was untimely and therefore constituted a waiver of any error. We disagree.

Prior to its cross-examination, the State was instructed not to bring defendant's post-arrest silence to the attention of the jury. Further, in addition to the objection made during the defendant's cross-examination, defense counsel moved for a mistrial immediately after defendant's examination. These steps were sufficient to preserve the question for review.

The propriety of using a defendant's post-arrest silence to impeach his alibi or defense at trial is a question about which there has been some dispute. *See United States v. Hale,* 422 U.S. 171, 173 n.2, 45 L. Ed. 2d 99, 95 S. Ct. 2133 (1975). The practice was approved in this state in *State v. Robideau,* 70 Wn.2d 994, 425 P.2d 880 (1967). *Robideau,* however, now appears to be overruled by the Supreme Court's recent decision in *Doyle v. Ohio, supra,* in which the court held a defendant's silence after receiving his *Miranda* warnings at the time of arrest, if used for impeachment purposes, violates his rights under the due process clause of the Fourteenth Amendment. *Doyle v. Ohio, supra* at 617.

The defendant in *Doyle* was prosecuted for a narcotics violation. He claimed, for the first time at trial, that he had been framed. In an effort to discredit his claim, the prosecutor was permitted over objection to cross-examine the defendant as to why he had not related this exculpatory story to the police at the time of his arrest. A majority of the court concluded that the warnings mandated in *Mi-*

*randa v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), compelled them to reject the State's argument that a permissible inference of fabrication may arise from the discrepancy between a defendant's exculpatory story at trial and his silence at the time of his arrest. The court reasoned that a defendant's silence after receiving his rights is "insolubly ambiguous" since it may constitute nothing more than his exercise of his rights. *Doyle v. Ohio, supra* at 617. The court further stated that implicit in the *Miranda* warnings is the assurance that silence will carry no penalty, and given this implication, the use of a defendant's post-arrest silence to impeach an explanation made at trial is fundamentally unfair and thus a deprivation of due process. *Doyle v. Ohio, supra* at 618.

We feel the facts in the present case demonstrate the validity of the court's rationale in *Doyle.* First, the circumstances of defendant's failure to claim self-defense after his arrest make it grossly unfair to permit use of this silence for impeachment purposes. When defendant attempted to make statements to the sheriff's deputies he was advised to tell his story to the Olympia police. When the police arrived, defendant again tried to tell his version of the incident and was told not to make any statements until he arrived at the police station. Thereafter it appears defendant refrained from making further statements, and obtained an attorney. Second, the fear of fabrication between the time of arrest and the time of trial, a concern discussed in *Doyle,* is not necessarily as justified where, as here, a defendant asserts a technical defense to conviction—a defense he might not be expected to be knowledgeable about at the time of arrest—as where a defendant, for the first time at trial, asserts an alibi as a bar to conviction.

For these reasons and pursuant to *Doyle v. Ohio, supra,* we hold that defendant's rights to due process under the Fourteenth Amendment were violated when he was cross-examined regarding his failure to claim that he had acted in self-defense.

The State suggests that even if error occurred, reversal is

not required and urges us to affirm the trial court's finding that the questioning was not prejudicial. The record and counsel's arguments on appeal indicate the verdict in this case was a close one. The error was presumptively prejudicial and under the circumstances we cannot say the jury would probably have rendered the same verdict had the testimony been excluded. *State v. Gibson*, 79 Wn.2d 856, 490 P.2d 874 (1971); *State v. Martin*, 73 Wn.2d 616, 440 P.2d 429 (1968); *State v. Redwine*, 23 Wn.2d 467, 161 P.2d 205 (1945).

Defendant's next assignment of error involves the trial court's refusal to permit his psychiatric expert to express his opinion as to defendant's state of mind at the time of the assault.

Dr. James Bremner, a psychiatrist whose qualifications are admitted, interviewed the defendant three times subsequent to his arrest and administered psychiatric tests. At trial defense counsel offered to prove that on the basis of the interviews and test results, Dr. Bremner was of the opinion that defendant had been in fear of his life or physical harm at the time of the shooting. The trial court excluded this testimony because it constituted an opinion on an ultimate issue.

Exclusion of the doctor's testimony solely on this ground does not accord with established law. An expert may state his opinion on an "ultimate issue" if it will aid the jury in reaching its verdict and does not mislead it to the prejudice of the objecting party. *State v. Alden*, 73 Wn.2d 360, 438 P.2d 620 (1968); *Gerberg v. Crosby*, 52 Wn.2d 792, 329 P.2d 184 (1958). There are, however, proper grounds for the exclusion of this testimony.

Defendant argues a medical expert may express an opinion regarding a defendant's "mental state" or "condition" at the time of the commission of an alleged crime, even though the opinion is based, as here, on facts other than personal or testimonial knowledge of the circumstances of the crime. We do not believe that the rule urged by the defendant is as broad as suggested.

■ Admission of psychiatric opinion evidence regarding a defendant's mental condition at a particular point in time, absent testimonial knowledge[1] on the part of the expert, has been permitted when relevant to the question of a defendant's sanity or whether he was suffering from a disease or defect of the mind. *See, e.g., State v. Tyler*, 77 Wn.2d 726, 466 P.2d 120 (1970); *State v. Davis*, 6 Wn.2d 696, 108 P.2d 641 (1940); *State v. McKeown*, 172 Wash. 563, 20 P.2d 1114 (1933); *State v. Eggleston*, 161 Wash. 486, 297 P. 162, 82 A.L.R. 1439 (1931); *State v. Bridgham*, 51 Wash. 18, 97 P. 1096 (1908); *State v. Fullen*, 7 Wn. App. 369, 499 P.2d 893 (1972). However, in cases where admission of an expert's opinion has been sought to establish the existence or absence of a defendant s specific intent or his premeditation at the time of a crime, the general rule excluding such testimony absent personal knowledge of the witness has been imposed. *See, e.g., State v. Tyler, supra; State v. Cogswell*, 54 Wn.2d 240, 339 P.2d 465 (1959); *State v. Farley*, 48 Wn.2d 11, 290 P.2d 987 (1955); *State v. Davis, supra.*

In the present case, no suggestion has been made that defendant's alleged fear at the time of the assault was the product of insanity or a mental defect. His state of mind at the time of the shooting therefore, is analogous to those cases in which a defendant's intent or premeditation was in question and not to cases involving an issue of a defendant's sanity, or whether he suffered from a mental defect. Dr. Bremner's opinion regarding defendant's mental state at the time of the shooting, therefore, absent testimonial knowledge, was properly excluded. *State v. Craig*, 82 Wn.2d 777, 514 P.2d 151 (1973); *State v. Tyler, supra; State v. Farley, supra; State v. Davis, supra.*

■ Defendant next claims the court erred in excluding his testimony regarding a third-party statement in which George Upton was allegedly accused of a specific act of

---

[1]"Testimonial knowledge" as used here means the information gained by a witness from his own observation as opposed to information learned from some other person or source. *See, e.g., State v. Davis*, 6 Wn.2d 696, 108 P.2d 641 (1940); *State v. Farley*, 48 Wn.2d 11, 20, 290 P.2d 987 (1955); *State v. Tyler*, 77 Wn.2d 726, 759, 466 P.2d 120 (1970).

violence. Successful assertion of self-defense as a defense requires not only that a defendant prove he honestly believed he was in danger of receiving great personal injury from his victim, but that he also had reasonable grounds for his belief. *State v. Tyree*, 143 Wash. 313, 255 P. 382 (1927); *State v. Rader*, 118 Wash. 198, 203 P. 68 (1922); *State v. Tribett*, 74 Wash. 125, 132 P. 875 (1913). Proof that a victim had a reputation for violence known to the defendant *or* that a defendant knew of a nonremote specific act of violence committed by the victim is admissible in support of defendant's theory of self-defense. *State v. Adamo*, 120 Wash. 268, 207 P. 7 (1922); *State v. Walker*, 13 Wn. App. 545, 536 P.2d 657 (1975); *State v. Cloud*, 7 Wn. App. 211, 498 P.2d 907 (1972). In the present case, in an offer of proof outside the presence of the jury, defendant proposed to testify that at some unspecified time in the past, he had overheard a conversation in which the victim, George Upton, was accused of having shot and killed his former wife. This testimony was remote and did not constitute proof of a specific act of violence by George Upton. No showing of the date when the alleged killing took place was made. Defendant appeared to be uncertain as to who made the statement he allegedly overheard. And, it did not appear that defendant actually understood or believed George Upton had in fact killed his wife: "I don't know the story, but she was shot in the stomach either accidental or suicide." In view of the speculative and ambiguous nature of the offered testimony, it was properly excluded.

Defendant next claims he was unduly prejudiced when the trial court denied his CrR 4.5 motion to compel the State to make the victim's FBI rap sheet available to him even though the State had disclosed all George Upton's convictions of which it had knowledge. Defendant's purpose for obtaining the FBI record was to enable him to challenge George Upton's credibility should he deny at trial any prior criminal convictions. The court's denial of the motion was made subject to making George Upton available for questioning by defendant's attorney prior to trial.

If, during this pretrial questioning George Upton denied prior criminal convictions, and if the defense could then demonstrate reasonable grounds to suspect he was lying, the court stated it would order the prosecution to make the rap sheet available. The record does not show whether or not defense counsel questioned George Upton pursuant to the court's order. The opportunity was available, however, and we cannot assume George Upton would have lied concerning any prior convictions. *Cf. State v. Brown*, 68 Wn.2d 852, 416 P.2d 344 (1966).

In view of the wide latitude given the defense to question George Upton and its failure to renew its motion, we find defendant suffered no prejudice when the motion was denied. *See State v. Brown, supra.*

Defendant's final assignment of error concerns the trial court's instruction No. 13 on the issue of self-defense.[2] At trial defense counsel generally excepted to the instruction but failed to indicate the grounds for his objection. On appeal he contends reference to "lawless acts" and to the word "kill" in the first sentence was improper since there was no evidence to support an instruction incorporating these terms. He also contends the second sentence was misleading since it permitted the jury to conclude that any number of things, including aspects of defendant's business relationship with George Upton, were the "fault" of the defendant, thus making his plea of self-defense unavailable.

An assignment of error against a given instruction, based upon a theory not presented to the trial court at the time exception is taken, will not be considered on appeal. *State v. Browder*, 61 Wn.2d 300, 378 P.2d 295 (1963);

---

[2]Instruction No. 13 states:

"You are instructed that no man can by his own lawless acts create a necessity for acting in self-defense and thereupon assault and injure or kill the person with whom he seeks the difficulty, and then interpose as a defense the plea of self-defense. Self-defense is the plea of necessity as shield only to those who are without fault in occasioning an affray, and acting under it. Therefore, if you find from the evidence beyond a reasonable doubt that the defendant was the aggressor and that by his own acts and conduct he provoked or commenced the affray, then the plea of self-defense is not available to him."

*Owens v. Anderson,* 58 Wn.2d 448, 364 P.2d 14 (1961); *State v. Cogswell, supra.* Normally, therefore, we would not consider the objections defendant now raises. However, since these questions may arise upon retrial, we deem it advisable to make some general comments regarding this instruction.

An instruction on an issue or theory which is unsupported by the evidence is improper. *State v. Piche,* 71 Wn.2d 583, 430 P.2d 522 (1967); *State v. Jackson,* 70 Wn.2d 498, 424 P.2d 313 (1967); *State v. Woods,* 163 Wash. 224, 1 P.2d 219 (1931). Unlike *State v. Thomas,* 63 Wn.2d 59, 385 P.2d 532 (1963), where the propriety of the "lawless acts" language in the first sentence of this instruction was also raised, no evidence was introduced in the present case indicating the defendant had committed illegal or unlawful acts which might have occasioned the assault. Reference to "lawless acts" therefore should be omitted if, upon retrial, no evidence is introduced upon which a jury could premise a finding that the defendant created the necessity to act in self-defense through some illegal or unlawful act. *Cf. State v. Thomas, supra.*

The same reasoning applies to the use of the word "kill" in the first sentence. Defendant was charged with assault, not with homicide. While the word "kill" in the context of the present case was probably not prejudicial, since no evidence was introduced on which the jury could have speculated that this was the State's theory, it should have been omitted. *See State v. Johnson,* 1 Wn. App. 553, 463 P.2d 205 (1969).

With respect to the defendant's objection to the second sentence of instruction No. 13, we note that whether or not an instruction is erroneous is not a matter of semantics, but rather whether the jury was misled as to its function under it. *State v. Durning,* 71 Wn.2d 675, 430 P.2d 546 (1967); *State v. Redden,* 71 Wn.2d 147, 426 P.2d 854 (1967). The second sentence, when read in conjunction with the last sentence of instruction No. 13, clearly informed the jury that the "fault" they were to consider was one which

actually provoked or commenced the assault and not a "fault" which may have been the basis for the business disagreements between the defendant and George Upton. In this context, we do not believe the instruction was misleading. We note further, that while we do not consider this a model instruction, it has been held not to constitute reversible error when supported by evidence. *State v. Hopkins*, 71 Wn.2d 10, 426 P.2d 496 (1967); *State v. Thomas*, *supra*; *State v. Turpin*, 158 Wash. 103, 290 P. 824 (1930).

Because of our disposition of the first issue, judgment and sentence are reversed and the case is remanded for a new trial.

PETRIE, C.J., and REED, J., concur.

Petition for rehearing denied November 17, 1976.

Review denied by Supreme Court March 21, 1977.